OPINION
JOHNSON, Associate Justice.
Mother appeals the trial court’s order terminating her parental rights. We exercise jurisdiction under Tribal Code section 310(h)(2) and affirm.
Mother gave birth to the child in June 1999. She testified that she cared for the child from her birth until mother’s arrest in March 2001 while she was attempting to smuggle marijuana across the Mexican border in California. At that time, the child was staying with her maternal grandfather and his family in Oregon. In June and July 2001, mother executed documents granting temporary custody of the child to mother’s uncle.
The child was taken into tribal custody under court order and placed in a tribal foster home in June 2002, after evidence of sexual abuse and concerns about her home setting came to the Tribe’s attention. After investigation and family counseling by the tribal Indian Child Welfare Department (ICW), the trial court returned physical custody of the child to the maternal uncle in November 2002. In May 2003, the child once again was removed from the uncle’s custody and was returned to the same tribal foster care family as before.
In April 2003, the Tribe filed an agreement with mother to plan for the return of child custody based on mother’s promises to remain drug-and alcohol-free and to undergo counseling and drug testing. Mother was released on parole from a California prison in May 2003. Her parole officer allowed her to visit Oregon to see her child in July 2003. At several meetings with tribal caseworkers, mother refused to submit to a urinalysis, became belligerent, was then not allowed to see the child, and subsequently did not return to California as scheduled. In August 2003, she was arrested in Marion County, Oregon, and returned to prison in California. In March 2004, she was again released on parole. She tested positive for drags two days later, then tested positive again in April, and was finally re-arrested in May and re-incarcerated for possession of drugs.
*111 The Tribe had originally filed a permanent plan to return the child to the maternal uncle’s custody but later changed its course after problems arose with keeping the child in that household. The Tribe then filed a new permanent plan for adoption of the child. Mother and the maternal uncle challenged that decision in the trial court, which approved the change in the permanent plan from “Return of Custody” to “Adoption.” This Court affirmed. In the Matter of C. G., Case No. Confidential (March 29, 2005).[1]
The Tribe next brought an action to terminate mother’s parental rights. A three-day trial took place in May and June of 2004. Mother was represented by counsel and appeared telephonically at the trial. On June 9, 2004, the trial court issued a written order terminating her parental rights. This appeal followed.
Two code provisions guide the trial court’s discretion to terminate parental rights. Tribal Code §§ 7.15(a)(2), 7.15(a)(3)(E). It is not clear why the Council set forth these standards in two separate provisions. Reading them together, w[7]e construe them to impose three required findings:
1. That termination of parental rights is consistent with the policy contained in Tribal Code section 7.15(a)(1) (the capital “A” in the text of Tribal Code section 7.15(a)(3)(E) appears to be a typo);
2. That termination of parental rights is in the child’s best interests; and
3. That one or more of the aggravating factors listed in section 7.15(a)(3)(E) exists.
The policy contained in Tribal Code section 7.15(a)(1) provides, as pertinent here, that “[t]he Tribe may support a termination of parental rights if the child is in a Tribally-approved or relative placement, an adoptive resource is available, and termination of parental rights is in the best interests of the child.” Tribal Code § 7.15(a)(1)(B). The determination that termination is in the child’s best interests must be supported, at least, by the testimony of a qualified expert witness that parental custody is likely to result in serious emotional or physical harm to the child. If all three criteria are satisfied beyond a reasonable doubt, the court may, in its discretion, terminate the parent’s rights.
Mother argues that the trial court erred in finding that termination of her parental rights was in the best interests of the child. She submits that the court erred in terminating her parental rights under section 7.15(a)(3)(E), because a majority of the required factors in section 7.15(a)(1)(B) did not exist. She argues that, even if the best interests of the child test was met, the court erred in making a finding of parental unfitness under section 7.15(a)(3)(E)(ii). Finally, she argues the court erred in finding that returning the child to her custody would likely result in serious physical harm.
The structure of mother’s argument betrays a misreading of the applicable statutes. The factors listed in Tribal Code section 7.15(a)(1)(B) guide the Tribe’s discretion in determining whether to support a termination of parental rights in a particular case. Although the statute mandates consideration of the listed factors, it specifically contemplates that the Tribe may consider factors not listed. See Tribal Code § 7.15(a)(1)(B) (viii). If a majority of the factors exist, the Tribe must conclude that termination is in the child’s best interests. Contrary to mother’s reading, the statute does not prohibit that eon- *112 elusion based on less than a majority of the factors. And the court’s evaluation of the child’s best interests is not restricted by any specific factors. See Tribal Code §§ 7.15(a)(2), 7.15(a)(3)(E). Although the list set forth in Tribal Code section 7.15(a)(1)(B) may be a useful starting place, it does not bind the court.
So viewed, mother’s argument reduces to three questions: First, did the trial court err in finding a risk of serious physical harm? Second, based upon that finding, among others, did the court err in concluding that termination was consistent with Tribal policy and was otherwise in the child’s best interest? Third, did the court err in concluding that mother was unfit?
Tribal Code section 310(h)(2) states that “(o]n appeal, the record and decision of the Trial Court shall be reviewed for error.” Despite its broad language, that provision does not require that we review every legal and factual decision of the trial court de novo. See Pearsall v. Tribal Council, No. A-03-02-002, at 4, 2004 WL 5599264, 5 Am. Tribal Law 58, 61-62 (Grand Ronde 2004);[2] Synowski v. Confederated Tribes of Grand Ronde, No. A-01-10-001, at 2 n. 3, 2003 WL 25756097, 4 Am. Tribal Law 122, 124 (Grand Ronde 2003).[3]
The first question on appeal challenges a factual finding based on witness testimony. With respect to that issue, as well as the trial court’s other factual findings, we give the usual deference accorded to findings of fact. We will not disturb them unless we are convinced that they are clearly erroneous. Deference to the trial court’s factual findings is proper, because the trial court is in a better position to assess the credibility of the witnesses and to weigh all the evidence that it hears in a particular case. See FRCP 52(a).[4] “A finding is ‘clearly erroneous’ when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539(1993).
The second and third questions challenge decisions of the trial court that represent the application of law to a set of facts to reach an ultimate legal conclusion. Such a “mixed question of law and fact” occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). We review such decisions de novo.
I. Did the trial court err in finding that returning the child to mother would likely result in serious physical harm?
The trial court may terminate parental rights “only if [it] finds evidence beyond a reasonable doubt that termination is in the child’s best interests, including testimony of a qualified expert witness that parental custody of the child is likely to result in serious emotional or physical harm to the child.” Tribal Code § 7.15(a)(2). Mother appeals the trial court’s factual finding that returning the child to her custody would likely lead to serious physical harm. She argues that the court relied on expert testimony that “did little more than provide mere speculation *113 based on highly unlikely circumstances.” As noted, we will reverse the trial court’s factual finding only if it is clearly erroneous.
The trial court relied on the testimony of an ICW employee, whom the court concluded was qualified as an expert witness based on skill and experience. The expert testified that, if the child were returned to mother’s care, she would suffer serious physical harm. That testimony was based on the expert’s general work experience and personal knowledge about the home environment of mother’s family, and on mother’s history of criminal and drug activity. In the expert’s opinion, mother would not be able to care for or protect the child if the child were returned to her.[5]
Under the Federal Rules of Evidence, which the Tribal Court has adopted, expert witnesses can be used if their “technical or other specialized knowledge” will “assist the trier of fact ... to determine a fact in issue.” FRE 702. The trial court properly relied on the expert’s opinion in determining the risk of future serious harm. Contrary to mother’s argument, the expert’s testimony was not “mere speculation based on highly unlikely circumstances.” We have reviewed the evidence on this issue and hold that the trial court did not err in making its finding.
II. Did the trial co-mt err in finding that termination of parental rights was consistent with Tribal policy and was in the best interests of the child?
As noted, the Tribal Code sets out eight factors for the Tribe to consider in determining whether termination of parental rights is in the best interests of the child. Those factors are (1) parental abandonment of the child, (2) an emotional or mental illness or mental deficiency of the parent that is of such duration or nature as to place the child’s physical or mental health at risk, (3) a substantial history of drug or alcohol abuse by the parent while the child is in tribal custody, (4) imprisonment of the parent for three or more years while the child is in tribal custody, (5) the absence of an appropriate parent-child relationship, (6) the child having been in tribal custody for a substantial period of time, (7) the existence of non-tribal siblings, and (8) any other factors the ICW deems relevant to the child’s best interests. Tribal Code § 7.15(a)(l)(B)(i)—(viii). For our purposes, the evidence, taken as a whole, must establish beyond a reasonable doubt that termination of parental rights is consistent with the Tribal policy described by the listed factors and is otherwise in the child’s best interests. Tribal Code § 7.15(a)(2) & (3)(E).
The trial court found that factors (1), (3), (5), (6) and (8) above were satisfied.[6] Mother does not challenge the court’s finding on factor (3). We consider each of her challenges on the remaining factors in turn.
1. Parental abandonment of the child.
The trial court found that mother had abandoned the child based on mother’s incarceration for much of the child’s life and her actions while not incar *114 cerated that resulted in her being re-incarcerated, which she knew would likely prevent her from seeing or caring for her child. Mother challenges the finding of abandonment on essentially two grounds. First, she argues that the court failed to give sufficient weight to the following evidence: (a) her testimony that she had responsibility for parenting her child for almost three years before her arrest in March 2001, (b) her actual efforts in contacting her child and the difficulties and expense inherent in making those contacts while incarcerated, and fc) her good chance of transferring her parole supervision to Oregon upon release a few months after trial. Mother’s argument asks us to review how the trial court weighed all of the evidence. We will not disturb the trial court’s weighing of evidence unless it is clearly erroneous. Based on our review of the record, we are not convinced that the trial court made any mistake.
Second, mother argues that the trial court erred by concluding that repeated incarceration amounts to per se abandonment, because, mother argues, that conclusion does not square with the Tribal Code’s definitions of “abandonment.” That argument presents a question of law reviewed for error. The problem with mother’s argument is that the trial court did not rule that repeated incarceration is per se abandonment. Rather, it concluded that “while incarceration is not per se evidence of abandonment,” the specific circumstances of mother’s incarceration and re-incarceration (because of parole violations), which prevented her from having anything but intermittent and inconsistent contact with her child through letters and telephone calls, provided “evidence beyond a reasonable doubt of abandonment.” In so finding, the court correctly construed the Tribal Code provisions defining abandonment, which include failure of a parent to maintain regular visitation or other contact with the child for a substantial period of time. Tribal Code §§ 7.15(a)(l)(B)(i) & (E)(iv).
2. Absence of an appropriate parent-child relationship.
 The trial court found that there was not an appropriate parent-child relationship between mother and the child. The evidence at trial showed that from at least March 2001 forward, mother did not have a parent-child relationship with the child. In addition, mother made only intermittent and inconsistent attempts to stay in contact with the child while mother was in prison. The child did not seem to know who mother was, called her foster parents “mommy” and “daddy,” and did not wish to have mother’s letters read to her or even to be near her.
Mother acknowledges the foregoing evidence, but, noting that the Tribal Code does not define “appropriate parent-child relationship,” suggests that the facts shown do not, as a matter of law, demonstrate the absence of such a relationship. What constitutes an appropriate parent-child relationship is not susceptible to any formulaic approach. The concept is a fluid one and whether an appropriate relationship exists depends on the totality of the circumstances peculiar to the case under review. It is sufficient here to say that the trial court’s factual findings are not clearly erroneous and that we disagree with mother’s proposed legal conclusion. If a functional parent-child relationship does not exist, it can hardly be one that the Tribe recognizes as culturally and socially appropriate. We find no error.
3. Child in tribal custody for a substantial period of time.
Mother challenges the trial court’s finding that the child had been in tribal *115 custody for a substantial period of time. The evidence demonstrated that the child was five years old in June 2004 when the trial court terminated mother’s parental rights. The child had been in tribal custody for two years. We agree with the trial court that that is a substantial period of time.
4. Other factors determined to be relevant by ICW.
The Tribal Code allows ICW to consider “other factors” that it “deems relevant to make a determination regarding the best interests of the child.” Tribal Code § 7.15(a)(1)(B) (viii). In this case, ICW considered it relevant that the child had bonded with her foster parents, that the foster parents were going to become the adoptive parents, and that the foster parents were committed to maintaining the child’s contact with her culture, Tribe, and birth family. Mother argues that the trial court erred in considering those factors, because they amount to a comparison between herself and the foster parents as potential placement resources for the child. Such a comparison, she submits, is “not eontemplate[d]” by the statute.
The Tribal Code expressly provides for ICW’s consideration in individual cases of other factors that weigh in the determination of the child’s best interests. We cannot conclude, as mother suggests, that ICW’s conclusions here were contrary to the tribal policy expressed in the statute. On the contrary, determining the child’s “best” interests in this situation suggests precisely the comparison that mother rejects.
The trial court did not err in finding that termination was consistent with the policy expressed in the statute, because five of the eight factors listed in section 7.15(a)(1)(B) were satisfied. For the same reasons, the trial court did not err in finding that the proposed termination of mother’s parental rights was in the child’s best interests.
III. Did the trial court err when it found the mother unfit I
The Tribal Code states that a parent can be unfit “by reason of conduct or condition seriously detrimental to the child * * * if integration of the child into parental care [is] improbable within a reasonable time due to conduct or conditions not likely to change.” Tribal Code § 7.15(a)(3)(E)(ii) (the statutory clauses are misnumbered). Conduct that can make a parent unfit includes, as relevant here, a substantial history of drug abuse while the child is in tribal custody, an addictive use of drugs that substantially impairs parental ability, criminal conduct that impairs the parent’s ability to provide adequate care for the child, and actual or impending imprisonment of the parent for a three-year period while the child is in tribal custody. Tribal Code § 7.15(a)(3)(E)(ii)(c)—(f).
The trial court heard evidence that (1) mother’s criminal and drug conduct had been seriously detrimental to her child and that she was unlikely to change her behavior within a reasonable time; (2) mother had a substantial history of drug abuse while her child was in tribal custody; (8) mother had demonstrated an addictive use of drugs from her teenage years onward, and that her conduct substantially impaired her parenting abilities; (4) mother engaged in multiple criminal acts that impaired her ability to provide adequate care for her child; and (5) mother was facing impending imprisonment that would cover a three-year period while the child would remain in tribal custody. Based on that evidence, we agree with the trial court’s conclusion that mother is unfit to parent the child.[7] ,
*116 Based on the foregoing, we hold that the trial court committed no error in terminating mother’s parental rights. The court’s termination order is AFFIRMED. The motion by attorney Robert Hutchings to withdraw as attorney of record for the child is GRANTED.
WE CONCUR: ROBERT J. MILLER, Chief Justice, DAVID B. THOMPSON, Associate Justice.

. http://www.grandroude.org/coun/Published Opinions/'appeals, html.

. Id.

. Id.

. The Tribal Court has adopted the Federal Rules of Civil Procedure.

. A police officer also testified as to criminal activity that occurred in the home as well as the presence of a registered sex offender in the home.

. The court also found that mother had neglected the child and counted that as a factor in assessing the child's best interests under Triba! Code section 7.15(a)(1)(B). Neglect, while it is certainly relevant to the child's best interests, is not a factor listed under section 7.15(a)(1)(B). Rather, it is an aggravating factor that may justify termination of parental rights under section 7.15(a)(3)(E).

. As noted, the court also found that mother had neglected the child, which is a separate aggravating factor under Tribal Code section 7.I5(a)(3)(E)(iii). Mother contends that that finding similarly was error. Under the statute, the finding of unfitness was sufficient by itself to support the trial court's decision.