OPINION
THOMPSON, Associate Justice.
Respondent-Appellant Confederated Tribes of Grand Ronde appeals from the trial court’s order reversing the decision of the Independent Review Board (IRB),[1] which upheld the termination of Petitioner-Appellee Richard Synowski’s employment with the Tribe. The trial court concluded that Synowski’s right to due process was violated at his IRB hearing because he had received inadequate notice and been denied the right to assistance of counsel at his own expense. We exercise jurisdiction under Tribal Code § 310(h)(2) and affirm.
I. BACKGROUND
In April 1997, the Tribe hired Richard Synowski as a mental health counselor at the Tribe’s Health and Wellness Center. He had prior experience as a mental health counselor and held a master’s degree. He was not, however, licensed as a professional counselor by the State of Oregon.
In July 1999, the Tribe enacted the Health Authority Ordinance, Tribal Code § 490, which created the Grand Ronde Health Authority. Under that ordinance, the Health Authority must “ensure that the Health and Wellness Center meets the standards of accreditation.” In April 2000, the Health Authority adopted a policy requiring that all health care professionals, including counselors, be licensed in the State of Oregon. Because Synowski was not licensed, the Tribe terminated his employment.
Synowski filed a grievance, claiming he was fired without proper notice or justification. He received a hearing before the IRB, at which he represented himself. The Tribe’s rules for IRB hearings prohibit attorney representation of any party or witness at the hearing. The IRB upheld Synowski’s termination. He then petitioned the trial court for review of the IRB’s decision under Tribal Code § 255.5(d), which provides for limited judicial review of the Tribe’s employment decisions by the Tribal Court.[2] After a complete review of the IRB record, the trial court reversed the IRB and remanded Sy-nowski’s case for a new hearing. It concluded that Synowski was entitled to a new hearing because his right to due process had been violated in two ways: (1) the prehearing notice failed adequately to apprise Synowski of the issues that would be addressed at the: hearing; and (2) the *124 Tribe’s prohibition against attorney representation of employees at IRB hearings denied Synowski the assistance of counsel at his own expense. The Tribe now appeals, challenging both of the trial court’s conclusions.
II, STANDARD OF REVIEW
To resolve this appeal, we find it necessary to address only the assistance-of-counsel issue. The trial court’s ruling that Synowski’s right to due process was violated by the Tribe’s rule prohibiting attorney representation of employees at IRB hearings presents a question of law, which we review de novo. See Wyner v. Manhattan Beach Unified School District, 223 F.3d 1026, 1028 (9th Cir.2000) (“Where the question under review is predominantly a question of law, the standard of review is de novo.”).[3]
III. DISCUSSION
The Tribe’s Human Resources Guidebook details the grievance procedures for employees. Regarding the hearings conducted by the IRB, the Guidebook provides, in part:
The grievant and the supervisor or manager whose action is grieved may be present throughout the hearing, may present his/her position and witnesses and may ask questions of the other party and the other party’s witnesses. The IRR may question witnesses and may request additional information from any party or call other witnesses, at its discretion. * * * Attorneys may not participate in the hearing on behalf of any party or witness.
Human Resources Guidebook 66 (2000) (emphasis added). The trial court, applying the familiar three-factor test for due process set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), concluded that the blanket prohibition against attorneys participating in IRB hearings denied Synowski due process. For the following reasons, we agree.
A. Due Process Rights
As the Tribe correctly notes, the right to due process for persons within the jurisdiction of the Tribe derives not from the United States Constitution but rather from the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. § 1301 et seq. The purpose of the ICRA, however, is to “ ‘se-curfe] for the American Indian the broad constitutional rights afforded to other Americans,’ and thereby ‘to protect individual Indians from arbitrary and unjust actions of tribal governments.’ ” Santa *125 Clara Pueblo v. Martinez, 436 U.S. 49, 61, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (quoting S.Rep. No. 841, 90th Cong., 1st Sess., 5-6 (1967)). Under the Tribe’s constitution, the Tribal Court has “the power to review and overturn tribal legislative and executive actions for violation of * * * the Indian Civil Rights Act of 1968.” Tribal Const, art. IV, sec. 3.
The ICRA protects non-Indians as well as Indians. It provides that “[n]o Indian tribe in exercising powers of self-government shall * * ⅜ deprive any person of liberty or property without due process of law.” 25 U.S.C. § 1302(8). “In reviewing tribal * * * procedures to determine if they comport with this due process guarantee, ‘courts * * * [have] correctly sensed that Congress did not intend that the * * * due process principles of the [United States] Constitution disrupt settled tribal customs and traditions.’ ” Randall v. Yakima Nation Tribal Court, 841 F.2d 897, 900 (9th Cir.1988) (quoting F. Cohen, Handbook of Federal Indian Law 670 (1982 ed.) (footnote omitted)). See also Santa Clara Pueblo, 436 U.S. at 62-72, 98 S.Ct. 1670 (noting that Congress did not intend the due process principles of the federal constitution to disrupt settled tribal customs and traditions).[4] Qur analysis of the assistance-of-counsel/due process issue presented here proceeds with an awareness of that fact. Significantly, however, the Tribe does not argue that any tribal custom or tradition is at risk if the general principles of due process under the United States Constitution are applied in this case. Indeed, in its opening brief the Tribe states, “The Trial Court correctly identified the three-factor test laid out in Mathews v. Eldridge [ ] as the standard for, determining whether due process required the right to have counsel present at the IRB.” Br. of Aplt. 19. Synowski also cites Mathews as controlling. We agree that test is: appropriate in the context of this case.[5]
*126 B. 'I'he Mathews v. Eldvidge Test
In Mathews v. Eldridge, the United States Supreme Court held that a court should consider the following three factors in determining what procedural protections are required to satisfy due process in a particular situation:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. at 335, 96 S.Ct. 893. We consider each of those factors in turn.
1. The Private Interest Affected
The private interest affected by official action in this case—an employee’s interest in continued employment—is undeniably significant. The trial court so found, and the Tribe takes no issue with that finding on appeal. In short, “the interest of an employee * * * in retaining his employment has long been recognized as substantial.” Garraghty v. Virginia Dept. of Corrections, 52 F.3d 1274, 1282 (4th Cir.1995).
2. The Risk of Erroneous Deprivation of Affected Interest
The risk of erroneous deprivation of the interest in continued employment also is significant if the employee foils to create a favorable record before the IRB, which under the Tribe’s employee-grievance procedures is the only forum where the employee is given an opportunity to create a full evidentiary record.[6] “The creation of a favorable record would require [the employee] to be personally well spoken, to have had the presence of mind to arrange, in advance of the hearing, witnesses in his or her behalf, and to cross-examine the [Tribe’s] representatives.” Johnson v. Mashantucket Pequot Gaming Enterprise, No. 1 Mash.Rep. 165, 175, 1 Mash. 115, 120 (Mashantucket Pequot Tr. Ct.1995) (holding that Mashantucket Pequot Tribe’s prohibition against attorney representation of employees before the tribal employment review board violated the ICRA’s due process clause), affirmed, No. 1 Mash.App. 21, 1 MPK 15 (Mashantucket Pequot CtApp. 1996).[7]
*127 Although presumably some employees will be able to handle those challenging tasks without legal assistance, we can safely assume that many will not. See Johnson, No. 1 Mash.Rep. 165 at 175, 1 Mash. 115 at 120 (“Many of the Gaming Enterprise’s employees, particularly the hourly employees, have limited educational backgrounds and have demonstrated the inability to communicate effectively in writing.”). “Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the [employees].” Goldberg v. Kelly, 397 U.S. 254, 270-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). That is so even though, as the Tribe notes, the IRB hearing is not governed by formal rules of procedure and evidence. In our view, “[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.” Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).
Having reviewed the record of the IRB hearing in this case, we are convinced that Synowski would have benefited from the assistance of counsel. Further, we agree with the trial court’s observation that Sy-nowski’s IRB hearing and those of the other discharged employees simultaneously being reviewed by the trial court “were relatively lengthy, sometimes contentious, always adversarial, and far from simple.” Synowski, et al. v. Confederated Tribes of Grand Ronde, Case No. C-00-11-003, etc., Order Remanding Cases to Internal Review Board 11, 2001 WL 36155770, 3 Am. Tribal Law 276, 284 (2001).
Finally, we are not persuaded by the Tribe’s argument that the risk of erroneous deprivation of an employee’s interest in continued employment is low because “the IRB hearing is not the only check against a mistaken or arbitrary decision by the Tribe”—ie., the employee “may petition the Trial Court for review of the decision terminating his employment and, if not satisfied with the result there, may appeal the decision to the Court of Appeals.” Br. of Aplt, 22. That argument discounts the importance of creating a favorable record before the IRB, which is critical to meaningful judicial review of the Tribe’s employment decision. For many employees, creating such a record simply will not be possible without the guiding hand of counsel. Although the employee may retain an attorney once the matter goes to court, by that time the record has been made and there is little an attorney can do to change it. Given the limited scope of judicial review of the Tribe’s employment decisions, the quality of the IRB record may in many instances determine the employee’s success in the courts.
3. The Tribe’s Interest
As for the third Mathews factor, the Tribe contends the trial court gave insufficient weight to the Tribe’s interest in barring attorneys, including its own attorneys, from TRB hearings. According to the Tribe, that interest is two-fold: (1) a financial concern—if employees are permitted to have attorneys at IRB hearings, then the Tribe will be required to have its attorneys present at those hearings; and (2) most importantly, a desire to keep the procedures as nonadversarial as possible, so as to enhance the employer-employee relationship, and “to provide a more level playing field for [the Tribe’s] employees— particularly those employees that cannot afford representation at the hearing.” Br. of Aplt. 23.
The Tribe’s concerns are legitimate, but as the trial court concluded, they are not sufficiently weighty to overcome the significant interests at stake for the employee. Regarding the Tribe’s financial concern, *128 we do not aecept its assertion that if employees are represented by attorneys at IRB hearings, then the Tribe always will be required to have its attorneys present. Insofar as that view is based on a belief that an employee’s attorney, without the Tribe's attorney there as a counterbalance, may mislead a board made up of lay persons, that concern does not carry considerable weight. “Juries, [for example,] generally are wholly comprised of lay persons, yet American society trusts the jury to make the correct decision based on the evidence before it—despite being buffeted by the arguments of lawyers.” Johnson, No. 1 Mash.Rep. 165 at 175, 1 Mash. 115 at 121. In short, although the Tribe may feel more comfortable with its attorneys present at IRB hearings involving a represented employee, it has not pointed to anything that convinces us it would be compelled to have legal representation in every such case to receive a fair hearing.
As for the Tribe’s desire to “provide a more level playing field” for employees, we disagree with its contention that the IRB hearing process is made more fair by reducing every employee to the level of greatest disadvantage—i.e., proceeding without the assistance of counsel. The Tribe asserts that attorneys were not excluded from IRB hearings prior to January 2000, and that the prohibition against attorney participation was implemented “because employees complained that they couldn’t afford attorneys and the Tribe had an unfair advantage by having its attorneys present.” Br. of Aplt. 23 n. 7. Assuming that was the case, the Tribe’s response—exclusion of all attorneys from IRB hearings:—hardly made it fairer for the employees as a whole; the new rule simply addressed the complaint of those employees who could not afford an attorney. It is easily argued that the better response to that complaint—in terms of overall fairness—would have been a rule prohibiting the participation of the Tribe’s attorneys in cases where the employee is unrepresented. In sum, we give little weight to the Tribe’s interest in leveling the playing field.
Further, although certainly a worthy objective, the Tribe’s desire to keep IRB hearings as nonadversarial as possible is not, in our view, significantly advanced by prohibiting the participation of counsel where the employee is willing to pay for an attorney. A review of the IRB hearing in the instant ease confirms what one would expect in a trial-type proceeding where the stakes are high for both parties—the process is inherently adversarial. Here, an employee was facing deprivation of his livelihood based on his not being a licensed mental health counselor and the Tribe was intent on implementing an important policy requiring licensure of its counselors. The obvious conflict between those positions would not be materially enhanced by the pax-ticipation of attorneys at the hearing. Indeed, it is the inherently adversarial nature of an IRB hearing that distinguishes this case from Walters v. National Assoc. of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), which the Tribe cites as support for its no-attorney rule.
In Walters, the United States Supreme Court decided whether the $10 statutory limitation on the fee that may be paid an attorney or agent who represents a veteran seeking benefits from the Veterans Administration violated the Due Process Clause of the Fifth Amendment to the United States Constitution. 473 U.S. at 307-08, 105 S.Ct. 3180. In holding that the fee limitation did not effectively deprive veterans of the right to employ counsel in violation of due process, the Court emphasized that “the process here is not designed to operate adversarially.” Id. at 333, 105 S.Ct. 3180. It went on to say:
*129 While counsel may well be needed to respond to opposing counsel or other forms of adversary in a trial-type proceeding, where as here no such adversary appears, and in addition a claimant or recipient is provided with substitute safeguards such as a competent representative, a decisionmaker whose duty it is to aid the claimant, and significant concessions with respect to the claimant’s burden of proof, the need for counsel is considerably diminished. We have expressed similar concerns in other cases holding that counsel is not required in various proceedings that do not approximate trials, but instead are more informal and nonadversary.
Id. at 333-34, 105 S.Ct. 3180.
Unlike the veterans-benefits process at issue in Walters and the other proceedings referenced in the foregoing excerpt, an IRB hearing is a trial-type proceeding where the adverse parties both appear. The Walters Court acknowledged that counsel may well be needed in such a proceeding. Moreover, nothing in the Court’s opinion suggests it would have approved a complete ban on the assistance of counsel like that at issue in the instant case. Even with the statutory limitation on attorney’s fees, a veteran seeking benefits still is entitled to the assistance of a pro bono attorney or one willing to work for the $10 maximum fee. See Walters, 473 U.S. at 308, 105 S.Ct. 3180 (quoting 38 U.S.C. § 3404(c)). The statute does not prohibit such legal representation and, as the Court noted, even in the absence of counsel the veteran is afforded “a competent representative, a decisionmaker whose duty it is to aid the claimant, and significant concessions with respect to the claimant’s burden of proof.” 473 U.S. at 333, 105 S.Ct. 3180. That is not the situation in an IRB healing. Thus, Walters, rather than supporting the Tribe’s position, cuts against it.
Finally, the Tribe does not argue, and we do not believe, that the participation of attorneys before the IRB necessarily would lengthen the hearings or make them more complex. In fact, attorneys may in many cases help to streamline the process by narrowing the issues and ensuring that only relevant evidence and argument are presented. Further, whether there would be a significant fiscal impact on the Tribe depends entirely on how it decides to deal with the possibility an employee will be represented by an attorney. For example, permitting an employee to have counsel at an IRB hearing would not prevent the Tribe from amending its rules to require the employee intending to use counsel to give the Tribe notice of that intent. Such a requirement would lessen the fiscal impact of permitting attorney representation of employees, in that the Tribe would know early in the process which cases may require the participation of its attorneys at an IRB hearing.
4. Assessment of the Mathews Factors
Having considered the foregoing factors, we conclude that to comport with due process the Tribe must allow attorney representation of an employee at an IRB hearing. The significant interest of an employee in continued employment, coupled with a substantial risk of erroneous deprivation of that intei*est if the assistance of counsel is prohibited, clearly outweighs the Tribe’s fiscal and administrative concerns. Permitting legal representation of employees at IRB hearings is consistent with the widely held view that “due process requires that a discharged employee’s post-termination hearing be substantially more ‘meaningful’ [than the relatively abbreviated pre-termination process].” Carter v. Western Reserve Psychiatric Habilitation Center, 767 F.2d 270, 273 ((5th Cir.1985). “At. a *130 minimum, this -requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him.” Id. (emphasis added). Accordingly, we hold that the Tribe’s rule prohibiting an employee from having the assistance of counsel, at his or her own expense, in an IRB hearing violates the due process clause of the ICRA.
IV. CONCLUSION
The trial court correctly concluded Sy-nowski was denied due process by the Tribe’s rule prohibiting attorney representation of employees at IRB hearings. Based on our review of the IRB hearing in this case, we are unable to say the result necessarily would have been the same had Synowski had counsel. See Tribal Code § 255.5(8) (“Without limiting the appropriate standard of review, the Tribal Court shall give due deference to the rule of nonprejudicial error and matters within the expertise or judgment of the Tribe or any Tribal Government Corporation.”). Synowski therefore is entitled to a new hearing at which he may exercise his right to the assistance of retained counsel. Because we affirm the trial court’s reversal of the IRB’s decision and remand for a new' hearing based on its conclusion that the Tribe’s no-attorney rule violated due process, we need not address the court’s additional conclusion that Synowski received inadequate notice of the issues the Tribe would address at the IRB hearing. Assuming without deciding that notice was inadequate, the Tribe will be able to address any alleged notice problem prior to the new hearing.
AFFIRMED.
WE CONCUR: DON OWEN COSTEELO, Chief Justice, ROBERT J. MILLER, Associate Justice.

. The trial court and the parties refer to an "Internal Review Board," but the Tribe's Human Resource Guidebook calls the review board an "Independent Review Board.” Human Resource Guidebook 65 (2000). Accordingly, we use that title.

. The Tribe has expressly waived its sovereign immunity "to judicial review exclusively by the Tribal Court of any Final Employment Decision upon the timely filing of a petition for judicial review with the Tribal Court by an aggrieved Employee in accordance with the ■standards and procedures established by the [Employment Action Review] Ordinance." Tribal Code § 255.5(e)(1).:

. The parties agree that our review of the trial court's decision is de novo, and both cite Wyner in support o( that conclusion. We also cite Wyner for the de novo standard of review, and do not find it necessary to set forth a detailed explanation of our adoption of this well-settled standard for reviewing pure questions of law (a standard which is consistent with the scope of review defined in the controlling ordinance, Tribal Code § 310(h): “On appeal, the record and decision of the Trial Court shall be reviewed for error (by the Court of Appeals].”).
We may not approach other questions with similar brevity. Although the Court may look to precedent from the Ninth Circuit, other federal circuits, and the United States Supreme Court to support the legal analysis in our opinions, we do not consider ourselves bound by that precedent, unless federal law requires otherwise. The same is trae for precedent from state courts and other tribal courts. Accordingly, with respect to issues on which there is not general consensus in the courts, we encourage the parties to inform us of the rationale and policy considerations that underpin the holdings of cases cited as support for an argument advanced in this Court. Additionally, it is appropriate to argue for adoption of the dissenters' position in a federal, state, or tribal court decision, so long as the proponent identifies the rationale or poli-c> consideration that warrants our embracing the dissenting view.

. We recognize that other tribal courts have adopted varying positions on this issue. Compare, e.g., In re Welfare of D.D., 3 N.W. Intertribal Court 269, 270 (Port Gamble S’Klallum Indian Res. Ct. App. 1994) ("While the meaning of due process under the Indian Civil Rights Act is similar to due process as defined under the United States Constitution, it is different. An Indian Tribal Court’s interpretation and application of due process represents the unique tribal sovereign, its distinctive tradition, culture and mores.”), with Hoopa Valley Indian Housing Authority v. Gerstner, 3 N.W. Intertribal Court 250, 258 (Hoopa Valley Indian Res. Ct App. 1993) (“The meaning of ‘due process’ under the Indian Civil Rights Act has been construed to be the same as the meaning of ‘due process' under the Federal Constitution of the United States.”).

. Under the federal analysis, the right to due process at an IRB hearing depends on the grievant having a protected property interest in continued employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). If the grievant has such an interest, the Tribe cannot terminate employment without due process. Id. The trial court correctly identified this preliminary question, noting that "[i]n prior decisions, [ it] ha(d] concluded that regular employees of the Tribe, who have passed their introductory period, have a property interest in their continued employment which entitles them to the protections of procedural due process if they are fired.” Synowski, et al. v. Confederated Tribes of Grand Ronde, Case No. C-00- 11-003, etc., Order Remanding Cases to Internal Review Board 5, 2001 WL 36155770, 3 Am. Tribal Law 276, 280 (2001). It then proceeded to decide the due process questions raised by Synowski, because “the Tribe d[id] not contend that [he] w[as] not entitled to procedural due process.” Id. The Tribe takes no different position in this Court, arguing simply that "(t]he circumstances and conditions existing in the present case did not demand the presence of legal counsel.” Br. of Aplt. 19. Accordingly, we proceed on the assumption that Synowski had a protected property interest in continued employment and thus was entitled to due process when he was fired.

. There are four steps in the Tribe's grievance procedure: (1) within 30 days of the event(s) giving rise to the grievance, the employee must file a written grievance with Human Resources, which then attempts to resolve the grievance without a hearing: (2) if the grievance is not resolved to the employee's satisfaction at the first level, the employee may request a hearing before the IRB, at which the grievant and the supervisor or manager may present witnesses, cross-examine the opposing party's witnesses, and present argument; Í3) if the employee obtains an adverse ruling from the IRB, the employee may petition the trial court for judicial review, which is limited to an on-the-record review of whether the "Final Employment Decision * ⅜ * (A) [violates applicable provisions of the {Tribal] Constitution * * *; (B) (vjiolates provisions, substantive or procedural, of applicable Tribal law or federal law; (C) [i]s arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with applicable law; * * * or (D) [i]s not supported by substantial evidence on the record taken as a whole,” Tribal Code § 255.5(8); and (4) either party may appeal the trial court’s ruling to this Court. Human Resources Guidebook 65-67 (2000); Tribal Code § 310(h).

. In Johnson, the Mashantucket Pequot Tribal Court decided the same assistance-of-counsel issue we must address in this case. The full text of the court's well-reasoned opinion can be found on the Internet at www.tribal-institute.org/opinions/pequol/1995.NAMP. 0000026.htm. The Mashantucket Pequot Court of Appeals' opinion is at www.tribal-institute.org/opinions/pequot/1996.NAMP. 0000002.htm.