*172 ORDER AFFIRMING ENROLLMENT COMMITTEE DETERMINATION
KATHARINE ENGLISH, Chief Judge.
I. ISSUE PRESENTED
Petitioner is appealing the Enrollment Committee’s decision to deny her application for enrollment in the Confederated Tribes of the Gx-and Ronde Community of Oregon. Ms. Loges’ claims on appeal are (l) that the Enrollment Committee’s decision was arbitrary and capricious because *173 the Enrollment Committee retroactively applied the wrong version of the Tribal Constitution in making her enrollment determination. Petitioner/Applicant claims that the Constitution in effect at the time the determination of her blood quantum was changed and/or corrected, thereby making her eligible for membership, should have been applied to her enrollment determination; (2) that the Tribe’s Constitutional amendment is unconstitutional under federal law and the application of the Amendment is arbitrary and capricious because it denies membership to new applicants who have the same blood quantum as other family members who appear on the Tribal Membership Roll; and (3) that her constitutional due process rights were violated because she did not receive notice of the pending amendment.
II. BACKGROUND
On July 27, 1999, the Bureau of Indian Affairs (BIA) conducted an election by eligible Tribal members to amend the Tribal Constitution. At the election, the amendment was approved by a considerable majority of the Tribal membership. On September 14, 1999, the Secretary of the Interior approved the amendment and it became effective. The amendment altered and in certain respects increased the Tribal membership requirements. Following the effective date of the amendment, the Tribal Enrollment Committee applied that amendment to pending applications for Tribal membership, including Petitioner’s application filed on February 20, 2001.
The Enrollment Committee reviewed Ms. Loges’ enrollment application and denied the application because she did not meet the new Constitutional enrollment requirement that she have a parent who was a Tribal member at the time of her birth. She satisfied the blood quantum requirement.[1] Ms. Loges’ mother, Ms. Lottie Childs, did not become a member of the Tribe until November 12, 1985. Ms. Loges was informed of the Enrollment Committee’s initial decision by letter signed by the Margo Mercier. Ms. Loges requested the Enrollment Committee reconsider its decision by letter. The Committee met to consider Ms. Loges’ appeal of its initial decision and decided to uphold its earlier decision of denial. Ms. Loges was informed of the Enrollment Committee’s decision on reconsideration by letter dated December 11, 2001, signed by Margo Mercier, Enrollment Coordinator. Ms. Loges then appealed the Enrollment Committee’s decision to this Court.
Petitioner has claimed, as set forth above, that the Enrollment Committee’s decision was wrong. Petitioner has asserted her claims and why she believes the decision was in error. The Court assures Petitioner that it has read the record individually, and has carefully considered this case separately on its own merits.
III. STANDARD OF REVIEW
In these proceedings, the Court’s standard of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H). The Court is to “give due deference to the rule of nonprejudicial error and matters within expertise *174 or judgement of the Committee or Council” Tribal Code § 4.10(d)(4)(H).
IV. ANALYSIS
Petitioner’s claims here arise from the fact that her mother was not a Tribal member when Petitioner was born during the termination years and that her mother, who was born before those years began, also had not been a Tribal member before termination.[2] Petitioner’s mother and other family members are now enrolled in the Tribe.
As noted, Petitioner’s first claim is that the Tribal Constitution that was in effect when her blood quantum was changed or corrected should have been applied in her case. Apparently, Petitioner seeks to have her application judged under the standards that were in effect before the 1999 constitutional amendment that changed the enrollment requirements. Previously, the Tribal Constitution, as it applies in Petitioner’s case, would not have required that she have a parent who was a Tribal member at the time of her birth and it would instead have been sufficient if she was “descended from a member of the Confederated Tribes of the Grand Ronde Community of Oregon[.]” Tribal Constitution, former Art V. section 1(b).
Other than the fact that Petitioner might prevail, there is no apparent reason to apply the earlier version of the constitutional provision in her case. As the Tribe notes, it does not keep track of the blood quantum of non-members. The Tribe acknowledges that the blood quantum of several members of Petitioner’s ancestral family was changed and increased in the Tribal records in 1999. But that change did not give Petitioner any vested right or entitle her forever to apply for Tribal membership under the version of the Tribal Constitution that was then in effect.[3] At most, Petitioner had then—and she had before—the opportunity and ability to apply for membership in the Tribe. But she did not pursue that opportunity until she applied for membership in 2001, after the constitutional amendment was in effect. It is her application that is the pivotal event. See In the Matter of Jeffers (C-00-06-037) (slip op 3-9) (version of constitution that applies to membership applications is that in effect at time of filing of application), remanded on other grounds, Confederated Tribes of Grand Ronde v. Duke at al (A-01-08-001 et al) (CA 10/1/02). Thus, the Enrollment Committee did not err in applying the amended version of the Tribal Constitution in Petitioner’s case.
Petitioner’s second claim is that the amendment to the Tribe’s Constitution is *175 itself unconstitutional or that the application of the amendment in her case is arbitrary and capricious because “it denies membership to new applicants who have the same blood quantum as other family members who appear on the Tribal Membership Roll.” That claim also is not persuasive. It might be thought that any disparity (or lack of equality) in treatment based on blood quantum could invoke strict scrutiny under the equal protection provision of the Indian Civil Rights Act (ICRA), 25 § 1302(8). But such disparities are viewed as being based on tribal political affiliation, not on race or ethnicity per se. United States v. Antelope, 430 U.S. 641, 646, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); United States v. Male Juvenile, 280 F.3d 1008, 1016 (9th Cir.2002).
And, stripped to its core, Petitioner’s claim amounts to the assertion that the Tribe is not free to define and alter its own membership requirements— an authority whose exercise necessarily leads to the classification of individuals and the possibility that those with the same blood quantum either may or may not be treated in precisely the same fashion. Put differently, Petitioner cannot force the Tribe to treat all those with the same blood quantum in exactly the same wTay. It is the Tribe and its membership that has the authority to establish membership requirements, not Petitioner (or anyone else for that matter). See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (“A tribe’s right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community”) (citations omitted).
Petitioner’s final claim is that her due process rights were violated because she did not receive notice of the pending constitutional amendment that changed the membership requirements. She was not entitled to such notice, however, “[N]o notice or opportunity to be heard need 23 proceed any legislative action of general applicability.” 37712, Inc. v. Ohio Dept. of Liquor Control, 113 F.3d 614, 619 (6th Cir.1997), citing United States v. Florida East Coast Railway Co., 410 U.S. 224, 244-45, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); Bi-Metallic Inv. Co. v. State Bd. Of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915); Nasierowski Bros. Inv. v. Sterling Heights, 949 F.2d 890, 895-96 (6th Cir.1091); accord, Pro-Eco v. Bd. Of Comm’rs of Jay County, 57 F.3d 505, 513 (7th Cir.), cert. den. 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995),[4] Thus, Petitioner was not entitled to any notice regarding the constitutional amendment or the vote that approved it.
V. CONCLUSION
The Enrollment Committee’s decision to deny Petitioner’s enrollment application was not arbitrary and capricious or a violation of Petitioner’s Constitutional rights.
IT IS HEREBY ORDERED:
The decision by the Enrollment Committee is affirmed.

. As pertinent here, the Tribal Constitution requires that Petitioner not be a member of another tribe, and that she possess at least one-sixteenth degree Grand Ronde blood quantum and have been bom to a parent who was a member of the Tribe at the time of her birth and who, unless deceased, remained a member at the time she filed her enrollment application. Tribal Constitution, Art. V, section 1(c).

. If Petitioner's mother had been a Tribal member both before and after termination, Petitioner could have qualified for membership. Petitioner’s mother was born in 1948, however, before termination in 1954, and she was not a Tribal member before or at the time of termination. Petitioner's mother did not become a Tribal member until 1985.

. Petitioner appears to present a type of due process argument. ‘ )T]he right to due process for persons within the jurisdiction of the Tribe derives not from the United States Constitution but rather from the Indian Civil Rights Act of 1968 (ICRA), 25 USC § 1301 et seq.” Synowski v. Confederated Tribes of Grand Ronde, No. A-01-10-001, 4 Am. Tribal Law 122, 124, 2003 WL 25756097 (2003). But the analysis under the two provisions may often be the same, nonetheless giving due deference to settled tribal customs and traditions. Id., 4 Am. Tribal Law at 124-26. Under the federal analysis, the right to due process requires the existence of a protected liberty or property right. Id., 4 Am. Tribal Law at 125, n. 5, citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed,2d 494 (1985). No party contends that requirement should not apply here.

. A referendum of general applicability is in effect a legislative action. 37712, Inc., 113 F.3d at 619 & n, 9 (citations oAittecl).