*87 ORDER REMANDING ENROLLMENT DECISION
DAVID D. SHAW, Chief Judge.
Petitioner seeks judicial review of the August 16, 2013 decision by Tribal Council removing him from the Tribal Roll of the Confederated Tribes of the Grand Ronde Community of Oregon (“the Tribe”, or “CTGR”.) Oral arguments were heard on this matter on June 26, 2014. Petitioner appeared through its counsel, Diane Henk-els. Respondent appeared through its counsel, Tribal Attorney Deneen Aubertin Keller.
I. PROCEDURAL BACKGROUND
By Tribal Council Resolution No. 142-13 dated August 16, 2013, Petitioner was dis-enrolled from the Tribe subject to a conditional right of appeal. Petitioner timely filed an appeal of the Tribal Council disen-rollment decision to this Court.
Tribal Council Resolution No. 142-13 was issued pursuant to a Tribal Council meeting. The Tribal Council meeting concerned in part an appeal by Petitioner of a July 12, 2013 decision by the CTGR Enrollment Committee to recommend removal of Brian L. Jackson, Jr. from the Tribe’s membership roll.
Subsequent to the oral arguments and oral order from this Court, but prior to the issuance of this written opinion, the Tribe adopted an amendment to the Tribal Enrollment Ordinance.[1] The amendment to the Enrollment Ordinance removes the Tribal Council from a role as a secondary review body following an enrollment decision of the Tribal Enrollment Committee. Tribal Enrollment Ordinance Section (i)(3), (5), (7). Pursuant to the recent changes to the Enrollment Ordinance, the Enrollment Committee makes a decision rather than a recommendation for disenrollment and this Enrollment Committee decision can be appealed directly to Tribal Court with all the rights to notice and opportunity for legal counsel of a pure adjudicatory setting. Id. Section (i)(5).
II. FACTUAL BACKGROUND
Petitioner was enrolled as a Tribal member in September 1985 and possesses more than 1/16 of Indian blood.
Respondent alleges that as of the time of Petitioner’s 1985 enrollment with the Tribe, Mr. Jackson, Jr. was also an enrolled member of the Klamath Tribe. The parties are in agreement and the record establishes that Petitioner’s name was removed from the Klamath Tribe’s membership roll by February 1998. No question exists that during Petitioner’s enrollment with the Tribe he was also an enrolled member of the Klamath Tribe.
During the time period of Petitioner’s dual enrollment, the Klamath Tribe was both a federally-recognized tribe and a tribe without federal recognition. Specifically, the Klamath Tribe, as part of a tragic history of federal Indian policy shared with other tribes, had its federal recognition terminated by the United States government in 1954 and did not regain federal recognition until 1986.
Petitioner alleges that in 1994 a Tribal representative compelled him to file paperwork with the Klamath Tribe and provided *88 assistance with this effort, and that this paperwork and Tribal effort dictated his enrollment with the Klamath Tribe contrary to his intent or understanding, and at a point in time when the Klamath Tribe was federally-recognized,[2] Petitioner submitted information to the Enrollment Committee and does not otherwise dispute, that he was a member of the Klamath Tribe from at least 1994-1998. Exhibit 2.7.
The contents of disenrollment-related letters provided from the Tribe to Petitioner, when they were provided, and what happened in the Enrollment Committee hearing process are crucial to the analysis and resolution of this ease. Specifically, on April 19, 2013 Petitioner was provided formal written notice by the CTGR Enrollment Committee of the results of an enrollment audit concerning his Tribal membership. Exhibit 24. This April 19, 2013 letter provided notice to Petitioner that the Enrollment Department was recommending his disenrollment and that he had the right to request a hearing with the Department within 30 days, at which he could hear the evidence against him, confront witnesses, present evidence, and be represented by counsel. Id. This right to a hearing and the manner with which Petitioner may participate in the same (including the right to counsel, confront witnesses, present and dispute evidence) is also provided in the public laws of the Tribe. Enrollment Ordinance Section (i). The second paragraph of the April 19, 2013 letter explicitly states that the audit determined that Petitioner was “enrolled in error because at the time you were enrolled you were also an enrolled member of another federally recognized tribe, specifically the Klamath Tribe.” Exhibit 24. The third paragraph of the same letter states that disenrollment is recommended for Petitioner “because you were enrolled in error and dually enrolled in violation of the Tribes’ Constitution,” Exhibit 24.
Petitioner received a second Enrollment Committee letter approximately one month later informing him of his specific hearing date. Exhibit 26. This letter did not repeat the language from the April 19, 2013 letter (and the Tribal Enrollment Ordinance) reciting the rights of Petitioner at his now scheduled hearing date. Id.
Petitioner timely requested and participated in the Enrollment Committee hearing without legal representation, but with one written document prepared by an attorney on his behalf. Petitioner presented evidence at his Enrollment Committee hearing that Klamath was not a federally-recognized tribe at the time he enrolled at CTGR in 1985, along with information that he had enrollment status with the Kla-math Tribe from 1994 until 1998. Exhibit 27. From this hearing, the Enrollment Department continued to recommend disenrollment, however the stated basis for disenrollment was merely due to a dual enrollment at any time Petitioner was a Tribal member, and the evidence that Petitioner was a Klamath member after the time that Klamath regained federal recognition and up until February 1998.
Petitioner subsequently received formal notice through Exhibits 44 and 45 that the Tribal Council would be taking action on the Enrollment Department’s recommendation of his disenrollment on August 14, 2013. Consistent with the Enrollment Ordinance, this notice did not state the same litany of rights available to Petitioner be *89 fore Tribal Council as the prior notice letter concerning Petitioner’s appearance before the Enrollment Committee. Id. This notice to Petitioner also stated that the Tribal Council would be considering the Enrollment Committee disenrollment recommendation based on his dual enrollment with the Klamath Tribe at any time. Id.
Petitioner attended the August 14, 2013 Tribal Council meeting, walked past the podium available for public speakers at Tribal Council members, and physically approached the Tribal Council bench and Tribal Council. Exhibit 47; Tribal website video archive of August 14, 2013 meeting available at www.grandronde.org/video/. Upon this approach, Petitioner was met by two Tribal police officers and escorted away. Id. The record is insufficient to determine if Petitioner was escorted by the police officers out of the meeting, if the police officers communicated to Petitioner that he had to leave the meeting, if Petitioner believed he had to leave the meeting based on the interaction with the officers, or if Petitioner left the meeting of his own accord. Id. The Tribal Council subsequently called Petitioner to speak at the August 14, 2013 meeting and the Tribal Council noted that Petitioner was not in attendance. Exhibit 47. At the same August 14, 2013 meeting, an individual stated that Petitioner’s mother desired to speak on behalf of Petitioner but was drawn away due to a family emergency and the Tribal Chair noted his awareness of this issue. Id.
The August 14, 2013 Tribal Council meeting ran long, and at the end of the meeting, the Tribal Council verbally stated to the remaining attendees that the Tribal Council would reconvene on August 16, 2013 to address the Enrollment Committee matters that were not resolved on August 14th. Id. Petitioner’s recommended disen-rollment was one of the items the Tribal Council did not resolve at the August 14, 2013 meeting. Id. No verbal or written notice was provided directly to Petitioner that a hearing on his proposed disenrollment would now be occurring on August 16, 2013.
On August 16, 2013, the Tribal Council reconvened, and called Petitioner to testify, and Petitioner was absent from this meeting. Id. At a subsequent moment in the August 16th meeting, after the Tribal Council took action on Petitioner’s disen-rollment, Petitioner’s mother stated that she was unable to speak at the August 14 meeting due to a family emergency. Id.
III. STANDARD OF REVIEW
Section (d)(4)(H) of the Tribal Enrollment Ordinance states that a disenrollment decision may only be remanded by the Court upon a finding that the decision on appeal was “arbitrary and capricious” or a “violation of Tribal Constitutional Rights.” The Court has held that the arbitrary and capricious standard of review is narrow, and prohibits the substitution of the Court’s judgment for that of the Tribal body on review. In the Matter of Reyn Leno, 27 ILR 6213 (2000). A violation of Tribal Constitutional rights may constitute either a question of law or mixed question of fact and law, compelling a de novo standard of review. Synowski v. Confederated Tribes of Grand Ronde, 4 Am. Tribal Law 122 (Grand Ronde Tribal Court 2003), citing Wyner v. Manhattan Beach Unified School District, 223 F.3d 1026, 1028 (9th Cir.2000).
IV. ANALYSIS
Petitioner raises several claims in its original and amended petition, and in its briefing and oral argument, including civil rights claims relating to the Tribal Constitution and its enshrinement of the Indian *90 Civil Rights Act as a matter of Tribal law. Due in part to the number of claims raised, the nature with which the civil rights claims are pled and advocated, and a desire to guide future litigants,’ the Court begins its analysis by discussing the claims that are denied.
Petitioner’s first denied claim is that it is arbitrary and capricious for the Enrollment Committee to make its decision upon the recommendation of the Enrollment Staff, when the same Staff had allowed Mr. Jackson’s lawful enrollment. It is neither arbitrary and capricious, nor even improper, for the Staff of an insulated Tribal community to have involvement with both initial enrollment and then disenrollment pursuant to a membership records audit, and applicable law establishes a membership standard where prior enrollment by error is grounds for disen-rollment. Tribal Constitution Article V, Sec. 5; Enrollment Ordinance (i)(l).
Petitioner’s second denied claim is that it is arbitrary and capricious for the Tribal Council to disenroll him when (i) his enrollment in the Klamath Tribe was dictated either solely or primarily by the Tribe’s own actions, and (ii) he relinquished his Klamath membership over fifteen years prior. In regards to item (i), Petitioner failed to present adequate proof in the record[3] that the dual enrollment was due to the Tribe’s own actions, and Petitioner failed to show that the Tribal Council had no other rational basis to disenroll, including when dual enrollment is based on an allegation of a mistake. See, Enrollment Ordinance Section (d)(4)(H)(Court’s review is limited to the record before the Tribal Council); Lena at 6216 (the reviewing Court may not substitute its judgment for that of the Tribal actor).
In regard to item (ii), Petitioner either failed to establish a sufficient factual record on this point and failed to articulate a clear point of advocacy, or otherwise presents a policy position in direct conflict with the Tribal Ordinance that a Tribal member can have an otherwise prohibited dual membership if the dual membership was relinquished at a certain point in time pri- or to the disenrollment action. Any such policy position should be addressed through the legislative process.
On a final related point, Petitioner’s legal arguments on points (i) and (ii) could also be interpreted to advocate that he has either some vested status or an exception to enrollment standards arising from the role of Tribal actors in events that led to his enrollment with the Klamath Tribe. The Court will not rule on this issue as it is immaterial to its decision, but notes that a decision and analysis on this in the future may need to include case law from other non-Tribal jurisdictions relating to reliance on actions of governmental actors and the presence or absence of a specific ordinance on point prohibiting any Tribal actor from creating such a right (or exception) to enrollment when dually-enrolled, and how such non-Tribal case law does or does not apply in this Tribal Court. Sy-nowski, n. 3 (discussing the role of case law from other jurisdictions and how such case law should be analyzed and discussed). See also, Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093 (9th Cir.1981) (anyone dealing with the. government assumes risk that governmental agent may be acting outside of his authority); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Lavin v. Marsh, 644 F.2d 1378 *91 (9th Cir.1981); Wilkinson v. U.S., 189 F.Supp. 413 (D.Or.1960); see also State v. Des Chutes Land Co., 64 Or. 167, 129 P. 764 (1913) (contract by a public officer in excess of his authority under statute is void to the extent it exceeds or departs from actual authority).
Petitioner’s third denied claim alleges a violation of the CTGR Constitutional open meeting requirement due to an allegation that Mr. Jackson was improperly removed from the August 14, 2013 Tribal Council meeting prior to a hearing on his disenrollment. This claim appears to allege a violation of Section (3)(f) of Article III of the Tribal Constitution. The concept of a public meeting is not incompatible with having a police or security presence. The concept of a public meeting is not incompatible with reasonable measures taken to remove individuals that violate the standards for the conduct of meetings (e.g. the method with which the audience may approach and speak to the Tribal Council). Thus, the mere allegation that the Petitioner was removed from the Tribal Council meeting does not meet the standard of a violation of the Constitutional requirement that Tribal Council meetings be open to the public.
Petitioner’s fourth denied claim alleges a violation of procedural due process rights based upon the property right of individually-held Tribal membership benefits and a claim that Mr. Jackson, Jr. was turned away by Tribal police when he approached the Tribal Council and the Tribal Government and Procedures Ordinance Section (d)(4)(A)’s statement that the Tribal Council policies and procedures be organized and maintained in compliance with the “standard” that “no one will be denied the opportunity to speak.” Petitioner unambiguously holds property rights sufficient for a due. process analysis. This claim still fails due to a misreading of the Tribal Government and Procedures Ordinance, which contains many standards in Section (d)(4) placing limits, restrictions, and conditions on how a person can and cannot speak at a Tribal Council meeting. A loss of a unilaterally-desired method and manner of speaking to the Tribal Council that conflicts with reasonable meeting standards does not result in a procedural due process violation, much less a violation of the Tribal Government and Procedures Ordinance.
Petitioner’s fifth denied claim alleges a violation of substantive due process and the related property right of Petitioner’s Tribal membership benefits. However, a claim for a violation of substantive due process must allege (and then prove) governmental actions that “shock the conscience.” United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Stated otherwise, Petitioner must show that the Tribal action at issue was “clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.” Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Patel v. Penman, 103 F.3d 868, 874 (9th Cir.1996), overruled on other grounds by Nitco Holding Corp. v. Boujikian, 491 F.3d 1086, 1089 (9th Cir.2007).
The “shock the conscience” standard of substantive due process claims is thus a relatively high burden focusing primarily on both (i) intentional acts by governmental actors or a high level of reckless indifference and (ii) the government improperly using its power as an instrument of oppression. The standard for a substantive due process claim is higher than the standard for mere tort liability. Traditional fact patterns supporting such a claim include an abuse of prisoners or involuntarily pumping the stomach of an *92 individual to find drugs used to charge the same person with a crime. See, County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (finding a lack of a sufficient shock of conscience in a police officer’s role in a high speed chase and subsequent death). An allegation that a Tribal governmental actor “required Mr. Jackson to file papers to obtain his family tree from the Klamath Tribe in order to obtain social services, and assisted him in this filing”[5] may appear negligent or even strongly disagreeable but based on the current record does not rise to the level of an intentional or recklessly indifferent act intended to harm the Petitioner with no sufficient relation to the public health, safety, morals, or general welfare.
Petitioner’s sixth denied claim alleges a violation of substantive due process under the Tribal Constitution and Petitioner’s liberty interest in his name and reputation as a Grand Ronde Tribal member. Based in part on the well-known Native, cultural sense of self and identity arising from Tribal membership, a loss of Tribal membership implicates a liberty interest.[6] However, this claim is denied for the lack of a sufficient allegation of a governmental action that shocks the conscience.
Petitioner’s seventh denied claim alleges a violation of his right to freedom of speech under the Tribal Constitution and the allegation that he was removed or hindered from speaking at the Tribal Council meeting when he approached the Tribal Council bench. Petitioner fails to make the necessary allegation for this claim about whether the speech restrictions are either content-based or a content-neutral restriction that is too broad, and the necessary secondary allegations. See, Watchtower Bible & Tract Society v. Village of Stratton, 536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002)(discussing the necessary allegations for a comparable freedom of speech claim).
In addition to the preceding claims, Petitioner’s advocacy[7] focused on the lack of repetition of information in all communications concerning a hearing before the Enrollment Committee. Petitioner acknowledges that accurate and complete information about his due process rights (notwithstanding the issue of misidentifi-cation of the stated basis for disenrollment) was delivered by written letter to him prior to his request for an Enrollment Committee hearing. Despite this acknowledgement, Petitioner advocates that a due process violation occurred when he received a subsequent letter (Exhibit 26) that did not repeat the same information. Petitioner makes this argument in the context of the Enrollment Ordinance’s public discussion of these same rights (e.g. Section (i)(2)’s discussion of the right to counsel, right to hear evidence against him, right to confront witnesses, right to present evidence). Petitioner also appears to acknowledge that he received only one other “insufficient notice of his rights” letter prior to his Enrollment Committee meeting (Exhibit 26), that this “insufficient notice” letter was delivered approximately one month after the “sufficient notice” letter (Exhibit 24), and that his Enrollment Committee hearing occurred approximately two months after the “sufficient notice” letter *93 and one month after the “insufficient notice” letter.
Due process does not categorically require that the same information be delivered in each and every communication from the governmental body. Moreover, it would be unreasonable to hold that the limited and explicit sovereign immunity waiver for a due process claim could be triggered upon a mere lack of perfect repetition by all Tribal governmental actors handling a multitude of administrative matters and documents, particularly when the record does not, show any reasonable confusion or ambiguity from this lack of perfect repetition. See, Griffin v. Oceanic Contractors Inc,, 458 U.S. 564, 102 S.Ct, 3245, 73 L.Ed.2d 973 (1982)(the law should not be interpreted to unreasonable ends).
Turning now to the successful part of Petitioner’s position, the obligation of the Tribe to provide due process stems from the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301 (ICRA), and its inclusion under the Tribal Constitution at Article III, Section 3(k). The Tribal Council is also obligated under the same section of the Tribal Constitution to provide due process to any person threatened with a loss of liberty or property.[8] It remains well-seasoned law of this Court and Indian Country in general that a court should be hesitant to apply the due process protections of ICRA in a manner that disrupts settled tribal customs and traditions. Synowski; F. Cohen, Handbook of Federal Indian Law, 670 (1982).
The Enrollment Ordinance authorizes this Court to remand any disenrollment action which violates due process rights under ICRA and the Tribal Constitution, as does the Tribal Constitutional authority of Article IV, Sec. 3.
This case places an issue before the Court that does not appear to be explicitly addressed by the Tribal Enrollment Ordinance-the due process obligations of Tribal actions to disenroll when the stated basis for disenrollment changes during the Enrollment Committee process. Stated alternatively, what does Tribal due process require when a Tribal member is told in advance to prepare for a hearing to disen-roll him based on variable X and the Enrollment Committee subsequently changes the basis for disenrollment, and recommends disenrollment after the hearing, due to variable Y? Due to the lack of a specific section of the Enrollment Ordinance that explicitly addresses such a fact pattern, the Court proceeds to analyze the issue under a general Tribal application of due process.
As noted by one tribal judiciary, “interpretations and applications of the Due Process Clause are ‘intensely practical matters and the very nature of due process negates any concept of inflexible procedures.’ ” In the Matter of Reyn Lena, at 6215 (2000) (citing Goss v. Lopez, 419 U.S. 565, 578, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Within the context of tribal governments, this “flexibility already inherent in due process generally, takes on greater meaning.” Id. at 6216. One key element of due process is that the level of formality, and the level of advance notice and pre-action hearing, increases in proportion to the nature of the liberty or property right at issue. Kennerly v. U.S.; 721 F.2d 1252 (9th Cir.1983).
Both parties appropriately cite to Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, *94 47 L.Ed.2d 18 (1976) along with the related case of Synowski v. Confederated Tribes of Grand Ronde as relevant to this case. Mathews states the well-known three part balancing test for due process claims of (i) the private interest affected by the government action; (ii) the risk that the interest is being deprived erroneously and the value, if any, of additional safeguards; and (in) the government’s interest, including administration burdens caused by the imposition of additional procedural requirements. 424 U.S. at 335, 96 S.Ct. 893; Synowski
All parties agree that the loss of Tribal membership and related loss of Petitioner’s health, social service, financial and other benefits presents strong grounds for the necessary establishment of due process property rights at issue with a disenrollment action. Even if these specific property interests individually associated with the Petitioner were not at issue, the communal nature of property ownership in Native culture and tradition “well recognized in the field of Indian law” would extend to much of the property held by the Tribe for the benefit of its members and provide an additional property interest for Petitioner to qualify for due process protections in a disenrollment action. Bordeaux v. Wilkinson, 21 ILR 6131, 6132 (Ft. Bert. Tr. Ct., Oct. 1, 1993); see also Felix S. Cohen’s Handbook of Federal Indian Law, p. 184 (1941). Regarding a liberty interest, the Tribe does not comment on whether it agrees with the assertion that a sufficient liberty interest exists in one’s name and reputation as a Tribal member for due process obligations. Due to the sufficiency of a property interest at issue the Court does not need to resolve this question. Relying on all of the foregoing, a strong private interest is at stake under the first Mathews element.
Turning to the second Mathews element, the analysis can be broken into two separate but related parts—the risk that the private interest is being deprived erroneously and the value, if any, of additional safeguards.
For purposes of this analysis, the Court considers the application of the harmless error standard as applied to this second Mathews element and the defective notice provided to Petitioner of the basis of his proposed disenrollment. Specifically, we must consider if a sufficient value or benefit could be achieved by stopping the Enrollment Committee hearing process and providing new and improved notice (with sufficient clarity, sufficient specificity, and at a sufficient point in time prior to the Enrollment Committee hearing) about the change in basis for disenrollment when eventual disenrollment appears likely from the Respondent’s perspective.
Outside of ICRA, the federal courts have discussed the circumstances when a constitutional error could be considered within or outside the harmless error standard. One principal arising from these discussions is that to avoid application of the standard, an error must rise to the level of contaminating the proceeding or call into question the fundamental fairness of a proceeding. See, U.S. v. Padilla, 415 F.3d 211 (1st Cir.2005). A second principal is that the burden is on the government to establish the harmlessness of the error. A third principal is that while many constitutional errors are not considered harmless, “there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless.” Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The fourth principal is “there are some constitutional rights so basic to a fair *95 trial that their infraction can never be treated as harmless error....” Id. at 23, 87 S.Ct. 824. The fifth principal is that a court should avoid placing too much emphasis on evidence of the government’s eventual success to drive a conclusion of harmless error, while also allowing a finding of harmless error when the error relates to an improper element (often evidence improperly admitted) in the hearing that is counterbalanced by an abundance of similar, probative elements in the hearing. Id.; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
Here, no valid legal question remains about the rights provided to Petitioner at the Enrollment Committee meeting (right to counsel, right to hear and present and challenge evidence) other than the issue of adequate notice of the basis for the proposed disenrollment action and the timing and method with which such notice was delivered. Within the due process context, notice provides the charged party a chance to learn and clarify the nature and basis of the proposed action, and also adequately prepare a defense related to such notice. See, In Re Gault, 387 U.S. 1, 33-34, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Notice obligations thus present the need to both timely and clearly inform the affected individual of the proposed action and grounds for it. See, Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, 397 U.S. 254, 267-68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187,14 L.Ed.2d 62 (1965); Mullane v. Central Hdnover Bank & Trust Co., 339 U.S. 306, 314-15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
Due process requires “notice that gives sufficient detail to allow an opposing party to prepare his defense.” Barms v. Healy, 980 F.2d 572, 579 (9th Cir.1992). In evaluating the sufficiency of notice, a court may consider the legal sophistication and experience of the recipients of the notice, including whether legal counsel represents the recipient. Bliek v. Palmer 102 F.3d 1472, 1475 (8th Cir.1997); See also, Thomas v. Colville Confederated Tribes, AP90-12424-12428 (1 CTCR 48, 18 ILR 6126)(noting that due process rights had been violated where the court did not provide greater latitude and deference to a pro se defendant).
In other factual settings outside of a disenrollment action, the informal nature of due process under ICRA, and an applicable oral tradition and custom, could be sufficient to provide adequate notice for a tribal due process analysis. Alternatively, in other factual settings notice provided very close in time to the hearing could be considered reasonable for ICRA analysis. Here however, significant, written, advance notice is recognized both as a Tribal value through the Enrollment Ordinance at issue[9], and also as a hallmark of the necessary due process that must be provided to establish fundamental fairness.
The second part of the second Mathews element is the value, if any, of additional safeguards. Here, the record shows that Petitioner appeared pro se at the Enrollment Committee hearing after being provided written advance notice (Exhibit 24) that his disenrollment hearing before the Enrollment Committee was based on dual enrollment as of 1985,[10] This decision to *96 appear without legal representation may-have been affected by Petitioner’s belief that his hearing was only about dual-enrollment with a federally-recognized Kla-math Tribe in 1985, and a related belief that such a hearing was “easy enough” to participate in and win without an attorney due to the dates and federal recognition timelines. Alternatively, with clear and accurate advance notice Petitioner could have presented a more focused and effective presentation, or presented different information and involved different witnesses. The Court finds that the burden for application of the harmless error has not been met. In addition, the related analysis of the second Mathews element tips slightly in favor of the Petitioner’s private interest due to the role which inadequate notice of the basis for the proposed disenrollment effects fundamental fairness.
Turning to the third Mathews element, one must analyze the government’s interests including the administrative burdens caused by the imposition of additional procedural requirements. This analysis also implicates what happened at the Tribal Council meetings, and how the somewhat unique events of the notice problems from the Enrollment Committee process dictated different due process obligations for the Tribal Council hearing process,[11]
Respondent advocates that because ICRA must be interpreted to avoid violating custom and tradition in Tribal culture, and tribes in general have the right to determine their own membership, the Tribe’s due process compliance must be analyzed to conclude no due process violation occurred because the Tribe did not violate an explicit provision of the Enrollment Ordinance. This argument fails as the Tribe’s Constitution simultaneously requires the disenrollment process to comply with due process and empowers the Tribal Court to overturn any legislative or executive action that fails to meet this standard.
The Tribe does have an interest in establishing and administering a disenrollment process under the third Mathews element. Moreover, the process cannot be unlimited in the amount of structure, time, rights, and opportunities required of the Tribe. In contrast, the concept of sufficient advance notice is essential to the preparation, participation, and eventual acceptance of the outcome of many types of hearings. See, Gault; Boddie.
From a retroactive view, one option before the Tribe was to provide new notice and a new hearing once the Enrollment Committee issued its Exhibit 24 advance notice letter and then determined that the focus for proposed disenrollment had moved from 1985 and the question of Kla-math’s lack or presence of federal recognition to enrollment with Klamath from 1994-1998. However, this is not the only option. A second option would be to use the Tribal Council meeting (occurring sub *97 sequent to the Enrollment Committee hearing) to operate as the hearing that provided sufficient advance notice of the date and time of the hearing along with the basis for proposed disenrollment, the right to legal counsel, the right to present and confront evidence and witnesses, and other elements of formality such as direct notice to an affected party if a meeting date and time is changed. Perhaps unknowingly, the Tribe appeared to select this second option and the failure to conduct the Tribal Council meeting process with these heightened standards eliminated the ability to cure the due process notice defects of the Enrollment Committee hearing before this matter was heard in Tribal court.
The record unambiguously reflects that Petitioner was not advised of a right to counsel, or told of the right to present or challenge witnesses, or told of the right to present or confront evidence at the time of the Tribal Council meeting. To the defense of the Tribe, no need for these rights would exist if effective advance notice of the basis for the proposed disenrollment had occurred at the Enrollment Committee hearing process.
Further, the record unambiguously reflects that the date for the relevant Tribal Council meeting was’ changed without direct notice (verbal or written) to Petitioner. Respondent appears to advocate a theory of waiver and the assertion that Petitioner left the Tribal Council meeting without any need to leave and that a sufficient due process hearing can occur by merely verbally informing the remaining attendees of a long meeting about the changed hearing date. The burden of proof is on Respondent to establish waiver and the record is conflicting and otherwise insufficient to meet the standard of waiver.
Respondent also advocates that the notice to Petitioner that he has an opportunity to speak at the Tribal Council meeting and have someone speak on his behalf is sufficient for due process purposes. This generalized statement falls short of the need to inform the private citizen of all the relevant rights of a hearing that now rises in importance to fix the due process defects of Petitioner’s Enrollment Committee process.
Respondent also points to interactions noted in the record that Petitioner’s mother was involved in the Tribal Council hearings at issue and advocates that any communications to Petitioner’s mother should be sufficient for due process purposes. However, this argument fails as there is nothing beyond the insufficient record of the Tribal Council hearing to support a theory of Petitioner designating his mother as his representative and the scope and role of this designation.
In sum, the failure to provide direct advance notice to Petitioner of the changed date of his Tribal Council hearing, along with the failure to provide advance notice of similar rights to what Petitioner possessed at the defective Enrollment Committee hearing, prohibits consideration of the Tribal Council from otherwise curing the prior due process notice defects that dictate remand. Further, while these extra burdens at the Tribal Council hearing process are not insignificant, as are the extra burdens on the government of the alternative option of how the Enrollment Committee could have modified its procedures, they do not rise to such significance in a balancing test as to tip the third Mathews element to overwhelm the first, and second Mathews elements that are in favor of the Petitioner.[12]
*98 As previously mentioned, the Enrollment Ordinance has been modified to currently remove the Tribal Council from the disenrollment process. For this reason, and based on the due process obligations and analysis herein, the remand ordered by this opinion merely compels the Petitioner and Respondent to conduct a new Enrollment Committee hearing, where sufficient and clear advance notice of the basis for the proposed disenrollment is provided along with all other rights noted in the Enrollment Ordinance.
V. CONCLUSION
IT IS HEREBY ORDERED; This matter is remanded to the Enrollment Committee to conduct a new hearing on Petitioner’s recommended disenrollment and under the current Enrollment Ordinance. To the extent the Enrollment Committee makes a decision on remand to disenroll Petitioner, the decision shall be subject to the right to directly appeal to Tribal Court under the current Ordinance.

. For all purposes herein (including but not limited to standards of review and appeal procedures) the relevant Tribal Enrollment Ordinance is a version that predates the Ordinance in existence as of the date of this written opinion.

. Whether this 1994 effort was a subsequent attempt for enrollment with the Klamath Tribe, or an offshoot from enrollment with Klamath in 1985 and a related belief Klamath still lacked federal recognition, or a belief that Petitioner did not remain a member of the Klamath Tribe once it achieved federal recognition, is unknown.

. As discussed further herein, the role with which inadequate notice of the basis for the disenrollment action to be adjudicated at the Enrollment Committee hearing may have contributed to Petitioner’s failure.

. Petitioner's Amended Petition, page 1, lines 22-23,

. See, Red Power—The American Indians' Fight for Freedom, 2nd Ed. Joseph, Nagel, Johnson, p. 285, 1999,

.This included both oral advocacy, and written advocacy at page twelve of Petitioner’s Opening Brief and page four of Petitioner’s Reply Brief.

. For purposes of this opinion, the Court determines that under Article III, Sec. 3(k) the Tribal Constitutional due process obligations on the Tribal Council are not materially different than the obligations on the Tribe and that the Tribal Council is otherwise subsumed within this Constitutional reference to obligations of the Tribe,

. Section (i)(2) of Enrollment Ordinance.

. Respondent raised oral arguments that Exhibit 24 could be interpreted to suggest that two separate basis for the proposed enrollment will be at issue in the Enrollment Hearing. We find that this is at best an argument that Exhibit 24 is ambiguous, and although we find the Exhibit to communicate to the contrary of Respondent's position, resolving *96 this dispute is immaterial as ambiguity alone on such a key point and in light of the other Mathews factors, is sufficient to support remand.

. A reasonable argument exists that but for the notice defects at the Enrollment Committee level, the perceived and alleged imperfections with the Tribal Council process, including a failure to prove waiver through an allegation that Petitioner voluntarily left the meeting and a failure to provide direct notice to Petitioner that his Tribal Council hearing was moved to a different date and time, would have no material effect on the legal compliance of the Tribe with due process and other obligations under the Enrollment Ordinance and Tribal Constitution, However, perhaps unbeknownst in the moment, the Enrollment Committee notice problems dictated a need to consider modifying the Tribal Council hearing process in a manner that could have otherwise cured any defect from the hearing below.

. The Court also acknowledges that the somewhat unique path of this enrollment matter through and out of the Enrollment Committee process dictated some unique and *98 perhaps unforeseen changes and choices compelled by due process, but not contemplated by an explicit section of the Enrollment Ordinance.