OPINION
ROBERT J. MILLER, Chief Justice.
Ed Pearsall (“Petitioner”) appeals the decision of the trial court that affirmed the Tribal Council’s decision to temporarily suspend him from his position as a Council member for violations of the now-repealed tribal ethics ordinance. We exercise jurisdiction pursuant to Tribal Code § 310(h)(2) and AFFIRM.

I. Facts

Petitioner was an elected member of the Grand Ronde Tribal Council in 2001 when Jan Michael Reibach (“Reibach Jr.”) brought an ethics complaint against him under the Grand Ronde Tribal Ethical Standards Ordinance (TESO), farmer Tribal Code § 275. Petitioner was represented by legal counsel and participated in an evidentiary hearing on December 18, 2001, before an ethics hearings officer. The hearings officer, the Yakama Nation chief judge, issued two opinions, dated January 18 and 26, 2002, finding that Petitioner had committed three separate TESO violations. The hearings officer recommended a seven-month suspension from Petitioner’s position on the Tribal Council.
The Tribal Council then adopted Resolution 028-02 on January 30, 2002, in which it accepted the findings and recommendations of the hearings officer and imposed a seven-month suspension without pay. Petitioner was present and spoke in his defense at the January 80 meeting, but his attorney was not present, allegedly because notice of the meeting was given too late for her to attend. Petitioner filed for judicial review of the Tribal Council’s decision in case number 02-02-004.
*61 Later, the Tribal Council reconsidered Petitioner’s suspension. On April 10, 2002, the Council called a special meeting, vacated Resolution 028-02, and adopted in its place Resolution 064-02. The new resolution reduced Petitioner’s suspension, still without pay, from seven months to five. Petitioner then filed for judicial review in case number 02-04-002.
The trial court consolidated Petitioner’s two actions for judicial review, and on February 19, 2003, Judge Sidney Lezak affirmed the Tribal Council’s adoption of Resolution 064-02. Petitioner now appeals that decision.

II. Standard of Review

In the trial court, Petitioner challenged his suspension from the Tribal Council on procedural grounds the process by which the Council decided to suspend him) and on substantive grounds (i.e., the authority of the Council to discipline him). Both his procedural and substantive challenges were based on the Grand Ronde Constitution and the Indian Civil Rights Act.
Under TESO, when judicial review of the Council’s sanction is sought, “the Tribal Court’s jurisdiction is limited to determining whether the sanctions imposed by Tribal Council were imposed arbitrarily and capriciously, in violation of the Tribe’s Constitution or the Indian Civil Rights Act.” Former Tribal Code § 275(f)(l)(L). In reviewing Petitioner’s case, the trial court therefore was required to determine, under the Constitution and the Indian Civil Rights Act, whether the Council had the authority to sanction Petitioner and whether it had employed a lawful process in sanctioning Mm. We review the trial court’s determination of those legal questions de novo. See Synowski v. Confederated Tribes of Grand Ronde, No. A-01-10-001, at *3, 2003 WL 25756097, 4 Am. Tribal Law 122, 126-27 (Grand Ronde 2003) (where question under review is a question of law, standard of review is de novo), http:// www.grandronde.org/eourt/ PublishedOpinions/SynowskiAppeal.PDF.

III. Discussion

Two preliminary observations are in order. First, Petitioner raises several arguments that turn on the validity of Resolution 028-02, which was vacated when the Council adopted Resolution 064-02 in April 2002. Because the existence of Resolution 028-02 between January and April of that year is pertinent to certain of his arguments, Petitioner argues that Resolution 028-02 was void in its inception. We disagree.
Petitioner argues that Resolution 028-02 was void under TESO because, he claims, Council member Reibach Sr. had a conflict of interest and was disqualified from voting. See former Tribal Code § 275(e)(2). The penalty for an ethical violation under TESO is a sanction and it is individual to the tribal official or employee involved. Foamier Tribal Code § 275(f). Petitioner points to no provision of TESO stating that a Tribal Council action is affected by a single member’s conflict of interest, and we are aware of none. Whether or not a court might find such a meaning in TESO, we hold that Resolution 028-02 was valid and effective until it was vacated by the Council or voided by a court.
Second, Petitioner argues for reversal because of certain discovery rulings by the trial court. Although the Tribal Court Ordinance suggests that we may be able to review this and all issues on appeal de novo, see Tribal Code § 310(h)(2), as a matter of prudence, we decline to do so here. Discovery decisions are left to the sound and broad discretion of the trial court and we will not ordinarily intervene *62 unless an appellant makes the “clearest showing that denial of discovery results in actual and substantial prejudice.” Sablan v. Dept. of Finance of N. Mariana Islands, 856 F.2d 1317, 1321 (9th Cir.1988). Most of Petitioner’s arguments about discovery relate to questions of law about which discovery of facts could make no practical difference. The one exception, to be discussed below, does not demonstrate any prejudice that would lead us to the conclusion that the trial court abused its discretion.
Petitioner argues, in essence, that he is entitled to conduct discovery into the process by which the hearings officer and the Tribal Council reached their decisions in this matter. Many federal courts have stated that a court is not authorized to inquire into the thought processes of decision makers, by ordering discovery and going outside an administrative record, merely because an appellant alleges bad faith or some improper conduct. Instead, these courts state that it takes a strong showing of bad faith or improper behavior before a reviewing court can permit discovery or supplementation of an administrative record. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Newton County Wildlife Ass’n v. Rogers, 141 F.3d 803, 807-08 (8th Cir.1998); Animal Defense Council v. Hodel, 840 F.2d 1432, 1437 (9th Cir.1988) (court cannot inquire into the thought process of decision makers unless an appellant has made a “strong showing of bad faith or improper behavior”). Petitioner does not, and did not at the trial court level, even come close to making the strong showing of bad faith or improper conduct such that we would direct the trial court to allow discovery outside the administrative record.
We now turn to the issues Petitioner raises under the Grand Ronde Constitution and the Indian Civil Rights Act.

1. Whether the April 10, 2002 special . Tribal Council meeting was lawfully convened,

Petitioner argues that the special Council meeting of April 10, 2002, in which Resolution 028-02 was vacated and 064-02 was adopted, was not lawfully convened, because he, as a Council member, was not given personal notice of the meeting. We disagree. Although the Constitution requires specific notice for special Tribal Council meetings (“No special meeting shall be called without at least twelve (12) hours’ notice to each member * * G.R. Const, art. Ill, § 3(b)), at the time of the April 10 meeting, Petitioner was not a member of the Council, having already been suspended by Resolution 028-02. No personal notice to him was constitutionally required.

2. Whether Petitioner’s dm process rights were 'violated in the April 10 meeting.

Petitioner claims that his due process rights under the Grand Ronde Constitution and the Indian Civil Rights Act[1] were *63 violated when he and his attorney were not allowed to appear, to present evidence, or to speak at the special Tribal Council meeting on April 10, 2002, when Resolution 064-02 was adopted and he was suspended for five months. We disagree.
Petitioner was suspended for seven months from his Tribal Council duties by Resolution 028-02 as of January 30, 2002. He was provided an opportunity to present his case against suspension and against the withholding of his compensation at that Council meeting. Before that, he was fully involved in his tribal ethics hearing. He was represented by an attorney and he presented evidence and argument before the hearings officer found that he had violated the ethics code and recommended his suspension. These procedures comply with the U.S. Supreme Court’s statement that due process requires that persons be given “some kind of notice and afforded some kind of hearing.” Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (emphasis in the original). Petitioner, however, argues that due process required that he be afforded the opportunity to be heard again on April 10, 2002, when the Council considered vacating his prior suspension and imposing an amended suspension. His analysis of that issue relies solely on federal case law. The Tribal Council’s analysis does the same. Therefore, in this case we will not go beyond the federal analysis in construing the due process clauses of the Grand Ronde Constitution and the Indian Civil Rights Act.[2]
Our trial court has already addressed this issue in an ethics violation setting, stating that a Council member accused of a TESO violation is only entitled to “the opportunity to be heard at a meaningful time and in a meaningful manner” and that “due process is a flexible concept that varies with the particular situation.” In the Matter of Reyn Lena, 27 Indian L. Rep. 6213, 6215, 2000 WL 35719153, - Am. Tribal Law - (Grand Ronde Tr. Ct.2000) (citing federal cases). We agree with that statement of the law and hold that Petitioner was provided with the opportunity to be heard at a meaningful time and in a meaningful manner.
Due process does not require that a person be heard at each and every step of an administrative process, at any particular step in the process, or even more than just once during the process. Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div., 312 U.S. 126, 152-53, 312 U.S. *64 657, 61 S.Ct. 524, 85 L.Ed. 624 (1941); Marinangeli v. Lehman, 32 F.Supp.2d 1, 7-8 (D.D.C.1998) (a federal agency action to suspend an attorney was proper when the attorney was represented, presented evidence, and testified at one hearing before an Administrative Law Judge; due process did not require that he have another hearing on appeal to the agency commissioner); Hunter v. Supreme Court of New Jersey, 951 F.Supp. 1161, 1181 (D.N.J.1996) (accused judge had a hearing, made statements, produced documents, and presented witnesses; due process did not require another hearing before the New Jersey Supreme Court could render a decision on the record). Petitioner has received all the process that is required by the Grand Ronde Constitution.

3. Whether Petitioner’s ethics hearing was fair and impartial.

Petitioner argues that his right to a fair and impartial ethics hearing was violated because the hearings officer was being charged with ethics violations of his own in his position with the Yakama Nation tribal court. Petitioner also alleges that there were improper ex parte contacts between the hearings officer and the officer’s employer, the Tribal Council, and that Petitioner was improperly denied discovery by the trial court into these issues.
Petitioner’s ethics hearing was not rendered unfair or biased based on his speculation about alleged or actual ethics issues the hearings officer was encountering in his home tribe. It is not clear how, even if it were true and established fact, the hearings officer’s ethics charge at Yakama would be relevant to his sitting as Petitioner’s hearing officer or why that would automatically render the ethics hearing unfair or biased.
We presume the honesty, fairness, and integrity of decision makers until the opposite is clearly demonstrated. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); Navistar Int’l Transp. Corp. v. EPA, 941 F.2d 1339, 1360 (6th Cir.1991) (“[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.”); Animal Defense Council v. Hodel, 840 F.2d 1432, 1437 (9th Cir.1988) (courts cannot inquire into the thought process of decisionmakers unless the appellant has made a “strong showing of bad faith or improper behavior”). Below, Petitioner did not make any showing of dishonesty, bad faith, or improper behavior by the hearings officer that would raise an inference of bias or partiality or one that even would justify discovery into this question.
Petitioner’s arguments about “ex parte ” contacts between the hearings officer and the Tribal Council have even less substance to them. The Tribal Council employed the hearings officer to conduct a hearing on its behalf under TESO. The Council was not a party to the matter before the hearings officer and could not engage in an “ex parte ” contact.
We have no reason to disapprove of, or interfere with, the trial court’s broad discretion to control discovery regarding the hearings officer or the alleged ex parte communications questioned here by Petitioner.
J. Whether the Tribal Council has authority to suspend its own members.
Petitioner makes a general separation of powers argument, without citing the Grand Ronde Constitution, that the Tribal Council does not have the authority to suspend elected Council members.[3] We disagree with his argument.
*65 The Constitution clearly grants the General Council of the Tribe—all enrolled members aged eighteen and over—several exclusive powers. Among the General Council’s powers is the sole authority to elect Tribal Council members and to recall them from office. G.R. Const, art. II, § 1(a) & (d). The Constitution then “grants to the Tribal Council all legislative authority, except that vested in the General Council, and all executive authority of the Tribe....” Art. Ill, § 1. The Constitution also authorizes the Tribal Council to enact its own rules of procedure as long as they do not conflict with any constitutional provisions. Art. Ill, § 3.
Since no constitutional provision forbids the Tribal Council from disciplining its own members by temporarily suspending them, we assume that this power is part of the Council’s inherent authority to control itself and is implicitly authorized by Article III, section 3. “The [TJribal [CJouncil must have the authority and the freedom to establish standards governing the conduct of its members.” Brandon v. Tribal Council for the Confederated, Tribes of the Grand Ronde Community of Oregon, 18 Indian L. Rep. 6139, 6140 (Grand Ronde Tr. Ct.1991). Part of that authority is the power to discipline, by suspension and otherwise, Council members who violate the standards of conduct established by the Council.

5. Whether the Tribal Council has authority to withhold pay from suspended member's.

Petitioner argues that TESO does not expressly grant the Tribal Council authority to withhold the salary of suspended members. Although TESO does not expressly authorize it, we hold that denying Council members compensation while they are suspended is a reasonable interpretation of TESO. The Council’s interpretation of TESO is entitled to substantial deference, because it not only drafted the ordinance but also was entrusted with administering it. See, e.g., Chevron, U.S.A., Inc, v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (considerable weight should be accorded to executive department’s construction of statutory scheme it is entrusted to administer; court need not conclude that agency’s construction of statute that it administers is only one it permissibly could have adopted to uphold construction); Providence Health System-Washington v. Thompson, 353 F.3d 661, 664-65 (9th Cir.2003) (a reviewing court should give effect to an agency’s interpretation of its own regulation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulation). As the Council correctly points out, suspension is a temporary deprivation of the rights and privileges of an office. The Compact Oxford English Dictionary 1976 (2d ed.1991). The Council could have reasonably interpreted TESO to prohibit Petitioner’s receiving compensation for serving as a Council member while he was suspended from that position. The Council reasonably could have concluded that to read TESO otherwise would actually unjustly enrich Petitioner by paying him during the period of suspension. In essence, this would grant him a “paid vacation” and reward a violation of the TESO standards. Accordingly, we find no basis for disturbing the Council’s construction of TESO.

6. Whether the Tribal Council’s sanction in this matter ivas excessive or unusual.

Petitioner argues that his suspension and the withholding of five months compensation was an excessive fine or un *66 usual punishment under the Indian Civil Rights Act. The provision of the Indian Civil Rights Act that he cites, however, applies only to criminal sanctions. 25 U.S.C. § 1302(7). This provision is not applicable to a TESO civil proceeding. Moreover, we do not consider a withholding of compensation that matches exactly the length of time Petitioner was suspended from the Council to be excessive or unusual. Indeed, it would have been “unusual” to pay Petitioner for time in which he was suspended from performing duties for the Tribe.

IV. Conclusion

For the above stated reasons, we AFFIRM the Trial Court decision, which affirmed the Tribal Council’s imposition of a five-month suspension without pay on Petitioner.
WE CONCUR: MARK JOHNSON, Associate Justice, DAVID B. THOMPSON, Associate Justice.

. It has long been recognized that tribal governments were not created by nor were they constrained by the U.S. Constitution or its Bill of Rights. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); Taitón v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896). In 1968, however, Congress exercised its plenary authority over Indian affairs and enacted the Indian Civil Rights Act, 25 U.S.C. § 1302, which does apply some of the American constitutional principies to Indian governments. Due process is one of them: "No Indian tribe in exercising powers of self-government shall ... deprive any person of liberty or property without due process of law.” 25 U.S.C. § 1302(8). The Grand Ronde Constitution expressly recognizes this principle and provides *63 that the Tribal Council “shall not . .. deprive any person of liberty or property without due process of law.” Further, "[t]he Tribe shall provide to all persons within its jurisdiction the rights guaranteed by the Indian Civil Rights Act of 1968.” G.R. Const, art. Ill, § 3(k). The tribal court is charged with ensuring that "tribal legislative and executive actions” comply with the Grand Ronde Constitution and the Indian Civil Rights Act. G.R. Const, art. IV, § 3.

. Some tribal courts have held that due process can have a different meaning in a tribal court than in a federal or state court. The Hopi Tribe v. Mahkewa et al, No. AP-003-93, ¶ 36 (Hopi 1995) ("The Hopi Tribe is not restrained by federal or state interpretations of 'due process.’ Federal and Arizona interpretations of 'due process’ emanate from the United States and Arizona Constitutions. The Hopi Tribe is guided by the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(8), in guaranteeing due process to individuals within its jurisdiction.”), http:// www. tribal resourcecen ter.org/opinionS/opfold-eiV1995.NAHT.0000008.htm. See also Alonzo v. Martine, 18 Indian L. Rep. 6129 (Navajo 1991) (formulating Navajo common law and applying the Navajo statute that authorizes it). Neither Petitioner nor the Tribal Council has departed from analyzing tribal due process under federal case law; thus we leave it for another day to determine whether this Court will develop a Grand Ronde definition of due process that might differ from the federal court interpretation.

. TESO authorizes as a possible sanction for Tribal Council members a "temporary sus *65 pension not to exceed three (3) months.” Former Tribal Code § 275(f)(l)(I).