OPINION
MILLER, Court of Appeals Judge.
In this consolidated appeal, the named Petitioner/Appellant, Val Alexander, appeals the September 1, 2015 Trial Court order which affirmed the Grand Ronde Enrollment Committee decision to disen-roll all Petitioners in Tribal Court Cases C-14-022 to C-14-088 from citizenship/membership in the Tribe.[1] We exercise jurisdiction pursuant to the Grand Ronde Tribe Enrollment Ordinance § (i)(6) and we REVERSE.
We do not address questions regarding the limits or boundaries of the sovereignty of the Grand Ronde Tribe and Grand Ronde people or of their exclusive authority to decide the requirements for citizenship in the Tribe. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Instead, we address two questions of first impression for this Court:
1. Is the Grand Ronde Tribe court system a court of equity?
2. Can this court system utilize equitable defenses, such as laches and estoppel, and apply them against the tribal government?
We answer yes to both questions. Under the unique facts of this case, we hold that the Tribe is prevented by the equitable principles of laches and estoppel from reopening, after 27 years, the issue of the enrollment status of the lineal (and lateral) ancestors from which the Petitioners/Appellants trace their Grand Ronde citizenship.
I. FACTS & PROCEDURAL POSTURE
In 1986, the lineal ancestors (and apparently for some Petitioners the lateral ancestors, Appellee’s Brief, at 5) through which all the Petitioners claim tribal citizenship, were enrolled in the Grand Ronde Tribe upon the recommendation of the Enrollment Committee and by vote of the Tribal Council. In 2013, the Tribal Council authorized an audit of the tribal roll of citizens/members and Petitioners were recommended for an Enrollment Committee investigation due to a potential error in the relevant 1986 enrollment decisions. After prolonged procedures and hearings, including discussions at two Tribal Council meetings or more, the Enrollment Committee was granted authority to make the final decision on disenrolling Petitioners. The Committee decided on July 22,2014 to disenroll the Petitioners/Appellants. Ap-pellee’s Brief, at 3-5,10-14.
Petitioner Alexander filed this lawsuit on August 20, 2014 to, in essence, enjoin the Tribe and the Enrollment Committee from disenrolling her. She raised estoppel and laches arguments to the Enrollment Committee, Hearing Brief, Tribe’s Supplemental Excerpts of Record, Exh. 5, at 20-22; Exh. 6, at 20-22, and to the Trial Court. Petition, Vol. 1 Petitioners Excerpt of Record, 247, 259-61. She requested the Trial Court “[ijssue an order reversing the Enrollment Committee’s decision to disenroll Petitioner/Appellant”, and requested that court to “order Petitioner/Appellant’s reinstatement as a rightful member of the” Tribe. Id. at 264. The Trial Court denied the Petition on September 1, 2015. Vol. 2 Petitioners Excerpt of Record, 351 & 368. This appeal followed.
*356 II. JURISDICTION & STANDARD OF REVIEW
We exercise jurisdiction pursuant to the Grand Ronde Enrollment Ordinance § (i)(6). The ordinance states that when Grand Ronde courts review Enrollment Committee loss-of-membership decisions that “[questions of law or mixed questions of law and fact shall be reviewed de novo.” Id. at (i)(5)(F)(ii). When reviewing questions of law or mixed questions of law and fact de novo, we review the Trial Court decision “from the same position as the trial court, considering the matter anew as if no decision previously has been rendered.” The Confederated Tribes of Grand Ronde v. M.Q., Case No. Confidential (Grand Ronde Ct.App.2013), at 4; see also Synowski v. Conf'd Tribes of Grand Ronde, 4 Am. Tribal Law 122, 124-25 (Grand Ronde Ct.App.2003).
The application of laches or estop-pel constitute mixed questions of law and fact, especially when the facts are undisputed, because the court has to apply these legal doctrines to the established facts in a particular case. See Platt Pacific, Inc. v. Andelson (1993) 6 Cal.4th 307, 319, 24 Cal.Rptr.2d 597, 862 P.2d 158 (‘When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court’s ruling.”); Lentz v. McMahon (1989) 49 Cal.3d 393, 403, 261 Cal.Rptr. 310, 777 P.2d 83 (“the weighing of policy concerns that must be conducted in a case of estop-pel against the government is in part a question of law.”); accord Feduniak v. California Coastal Commission (2007) 148 Cal.App.4th 1346, 1360, 56 Cal.Rptr.3d 591.
We are also “empowered to exercise all judicial authority of the Tribe ... [which] shall include ... the power to review and overturn tribal legislative and executive actions for violation of this Constitution or the Indian Civil Rights Act of 1968.” Grand Ronde Const., art. IV, § 3. Moreover, the Grand Ronde Tribal Court Ordinance, § (d)(1) (2013) grants us the “broadest exercise of jurisdiction.”
III. DISCUSSION
The decisive issue in this case is whether equitable principles of law prevent the Tribe from revisiting the question, in 2013, of whether the Petitioners/Appellants’ lateral and lineal ancestors were enrolled in error in 1986. To answer this question, we must decide first whether the Grand Ronde court system is a court of equity and can consider equitable issues; and second, whether this court system can use equitable claims and defenses, such as laches and estoppel, against the tribal government. We ultimately decide that the Grand Ronde court system is a court of equity and that both laches and estoppel prevent the Tribe from even raising the issue of the enrollment status of Petitioners/Appellants based on an alleged error in enrolling their lineal and lateral ancestors in 1986.
A. Courts of equity
The words “equitable” and “equity” mean, respectively, “Just; consistent with principles of justice and right;” and “fairness.” Black’s Law Dictionary 654, 656 (10th ed. 2014). A “court of equity” is one that follows the rules and principles of equity and fairness. See id. at 431.
The English and United States court systems have for centuries recognized equity jurisdiction, various equitable principles, and operated as both courts of law and of equity. 1 Dan B. Dobbs, Law of Remedies: Damages-Equity-Restitution 89 (2d ed. 1993); James M. Fischer, Understanding Remedies 190 (2d ed. 2006). In the early 1300s, the English courts of *357 law, also known as the legal courts and the common law courts, were hyper-technical and only allowed lawsuits to be brought under a limited and strictly defined set of claims. The failure of the courts of law to even consider other possible claims led to the development of an alternative form of jurisdiction and court known as equity. 1 Dobbs, supra, at 68. This court developed principles of fairness, morality, and equity, and eventually required the king’s chancellor, a royal minister, to also become a judge. By the 15th century, the chancellors had developed a court system that recognized claims and litigation procedures that the strict English courts of law did not. This process literally led to the operation of two separate court systems. Id. at 72; Fischer, supra, at 190.
The American colonies, the state courts, and the United States adopted these English principles of law and equity, and of separate legal and equity courts. In modern times, almost all 50 states and the United States have merged their equity and law courts into unified court systems where one judge can hear both legal/at law claims and defenses, and equitable claims and defenses in the same lawsuit. 1 Dobbs, supra, at 65-66, 148^9; Fischer, supra, at 189-92.
These developments lead us to the question of whether the Grand Ronde court system is a legal/at law court and also a court of equity and fairness?
The vast majority of American Indian nations have patterned their modern-day court systems somewhat on the federal and state systems. For example, the Grand Ronde Tribe has adopted the Federal Rules of Civil Procedure to be used in its Trial Court and the Federal Rules of Appellate Procedure for its Court of Appeals. Promulgation of Tribal Court Rules and Tribal Court Rules of Appellate Procedure, Dec. 21, 1998 & Aug. 3, 2001, Petitioners’ Excerpt of Record, 129-30. Thus, we look to the federal and state courts for some guidance in deciding whether or not to apply equity and equitable principles in our courts and in this appeal.
We are also well aware that almost all tribal courts apply their own principles of tribal common law, customary law, traditions, and well-known native beliefs of fairness and equity. In fact, the Grand Ronde Tribal Court Ordinance, § (g)(1), directs us to use Grand Ronde common law. See also Pearsall v. Tribal Council for The Conf'd Tribes of the Grand Ronde Community, 5 Am. Tribal Law 58, 63 n. 2 (Grand Ronde Ct.App.2004) (“Some tribal courts have held that due process can have a different meaning in a tribal court than in a federal or state court.” (citing Hopi Tribe v. Mahkewa, No. AP-003-93, ¶ 36 (Hopi 1995) and Alonzo v. Martine, 18 Indian L. Rep. 6129 (Navajo 1991))); Synowski v. Conf'd Tribes of Grand Ronde, at 125 n. 4 (“While the meaning of due process under the Indian Civil Rights Act is similar to due process as defined under the United States Constitution, it is different. An Indian Tribal Court’s interpretation and application of due process represents the unique tribal sovereign, its distinctive tradition, culture and mores.”).
Clearly, Indian nations did not learn “due process” and “fairness” from Anglo-American cultures. See, e.g., Begay v. Navajo Nation, 6 Nav. Rptr. 20, 24-25 (Navajo S.Ct.1988) (“The concept of due process was not brought to the Navajo Nation by the Indian Civil Rights Act.... The Navajo people have an established custom”); Raymond D. Austin, Navajo Courts and Navajo Common Law: A Tradition of Tribal Self-Governance 112 (2009) (“As the Court states, Navajo notions of due process are embedded in long-established customary practices and law ways. The Navajo Nation Supreme Court consistently *358 declares that the foundation for Navajo due process lies in traditional Navajo principles, practices, and values that define fairness, and not in Anglo-American concepts of fairness and fundamental rights”).
We find persuasive the analysis of Raymond Austin, a Navajo Supreme Court justice from 1985-2001. He states that his Nation’s court system supports and preserves its ancient traditions and fundamental values. Id. at xvii-xxiv, 18, 199-200. Significantly, he notes the Navajo legal principle of ch’ihonit’i (which literally means the “way out”) to be an equitable legal principle. Id. at 131-34. “In the legal context, the ‘way out’ custom would allow for application of the law tempered by considerations of fairness and justice that come from traditional Navajo ways of doing things.” Id. at 132. He also notes that Navajo “doctrine can produce equitable decisions that conform to Navajo concepts of fairness and justice in modem litigation.” Id. at 134.[2] See also Vine Deloria, Jr. & Clifford M. Lytle, American Indians, American Justice 148-51, 229-30 (1983) (“tribal law demands a special blending of traditional customs, which have evolved over centuries and are tenaciously held by reservation people as the proper way to resolve certain kinds of disputes, with modern notions of jurisprudence”; “All of this is a reflection of the Indians’ attempt to preserve a fund of their legal heritage.”); Rennard Strickland, Fire and the Spirits: Cherokee Law from Clan to Court 10-72, 96-102 (1975) (tribal goals and values are reflected in Cherokee laws).
The history of the Grand Ronde people, and American Indian and Anglo-American principles of equity discussed above, convince us to hold that the Grand Ronde court system is a court of law, and of equity, and that it has the authority and jurisdiction to consider equitable claims and defenses.[3] For example, our courts are law courts, legal courts, and we hear cases based on the Tribe’s Constitution and laws and common law; but we also have jurisdiction to address any equitable and “fair” claims and defenses a party properly presents. American Indian cultures, traditions, and laws clearly support the idea that modern-day tribal governments and their court systems protect both the legal rights and the equitable/fairness rights of litigants.
B. Laches
The doctrine of laches stems from the principle that “equity aids the vigilant, not those who sleep on their rights.” 1 Dobbs, supra, at 104; accord Doug Ren-dleman, Complex Litigation: Injunctions, Structural Remedies, and Contempt 251 (2010); Fischer, supra, at 441 (“Delay becomes unreasonable when there is no good explanation for delay.”). Laches advances numerous public policies such as promoting repose (the assumption that because so much time has passed a claim will not be *359 made against you), discouraging the filing of stale claims, and creating certainty about a plaintiff’s opportunity for recovery and a defendant’s potential liability. A time restriction on bringing claims also fosters just and fair results by ensuring that evidence remains reliable and that all litigants are aware of their rights. See 1 Dobbs, supra, at 89, 103-07; Fischer, supra, at 440.
Various courts have also described the reasons behind the development of laches. “[E]quity ... has provided its own rule of limitations through the doctrine of laches, the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.” Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940); see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29 (Fed.Cir.1992) (“laches may be defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.”); Powell v. Zuckert, 366 F.2d 634, 636 (D.C.Cir.1966) (“The defense of laches stems from the principle that ‘equity aids the vigilant, not those who slumber on their rights,’ and is designed to promote diligence and prevent enforcement of stale claims.”); Lake Dev. Enters., Inc. v. Kojetinsky, 410 S.W.2d 361, 367 (Mo.Ct.App.1966) (“ ‘Laches’ is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done.”).
The parties disagree whether this Court can apply laches to the Grand Ronde Tribe. The Tribe correctly cites federal cases that state that laches cannot be used against the federal government, or at least cannot be used against it when it is exercising sovereign rights. See, e.g., United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Yet the Petitioners also correctly cite federal cases where laches was applied to the federal government. We consider but we are not bound by this federal case law. As we stated in 2003:
Although the Court may look to precedent from the Ninth Circuit, other federal circuits, and the United States Supreme Court to support the legal analysis in our opinions, we do not consider ourselves bound by that precedent, unless federal law requires otherwise. The same is true for precedent from state courts and other tribal courts. Accordingly, with respect to issues on which there is not general consensus in the courts, we encourage the parties to inform us of the rationale and policy considerations that underpin the holdings of cases cited as support for an argument advanced in this Court.
Synowski, at 124 n. 3.
After conducting extensive research, we find that the federal case law on the application of laches to the federal government is unsettled and does not mandate a particular outcome in the appeal before us.
In fact, the U.S. Supreme Court has expressly left open the possibility of applying laches against the United States.[4] *360 And in Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), that Court stated that if “an inordinate EEOC [Equal Employment Opportunity Commission] delay” might cause a party to “be significantly handicapped in making” their case, then “the federal courts do not lack the power to provide relief.” Id. In such a case, “[t]he same discretionary power ‘to locate “a just result” in light of the circumstances peculiar to the case,’ ibid., can also be exercised when the EEOC is the plaintiff.” Id.
And significantly, federal courts have explicitly applied laches against the United States and Indian nations in cases where the U.S. intervened as a co-plaintiff to join the tribal plaintiff. Oneida Indian Nation, et al., United States of America, Intervenor-Plaintiff v. County of Oneida, 617 F.3d 114, 126-29 (2d Cir.2010), cert. den., 565 U.S. 970, 132 S.Ct. 452, — L.E.2d—(2011) (laches barred claim of Indian Nation and United States); Cayuga Indian Nation et al., United States, Plaintiff-Intervenor v. Pataki, 413 F.3d 266, 274-79 (2d Cir.2005), cert. den., 547 U.S. 1128, 126 S.Ct. 2022, 164 L.Ed.2d 780 (2006) (land claim of tribe and U.S. barred by laches; “We recognize that the United States has traditionally not been subject to the defense of laches. However, this does not seem to be a per se rule. Judge Posner has aptly noted that ‘the availability of laches in at least some government suits is supported by Supreme Court decisions’ .... ” (citations omitted)).[5]
In addition, the U.S. Supreme Court and other federal courts have expressly applied laches to tribal governments. City of Sherrill v. Oneida Indian Nation, 544 U.S. 197, 214, 217-19, 221, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005) (applying the equitable defenses of laches, acquiescence, and impossibility against Oneida Nation); Ottawa Tribe v. Ohio Dep’t of Natural Resources, 541 F.Supp.2d 971 (N.D.Ohio 2008) (laches used to dismiss Tribe’s suit due to long delay in filing).
Furthermore, there are numerous cases in which federal courts have applied laches against the United States, or in which they considered doing so but ultimately rejected the claim. Federal courts have often applied laches against the U.S. in Equal Em *361 ployment Opportunity Commission cases[6] and have applied laches and estoppel against other federal entities.[7]
In actuality then, notwithstanding the adage that laches cannot be used against the United States, there are numerous cases and situations in which federal courts have used laches and estoppel against the U.S. Moreover, tribal and state courts have also applied these defenses against tribal and state governments and them agencies.[8]
*362 In light of all this precedent, and the fact that Grand Ronde courts are courts of equity, we have no hesitation in holding that laches and estoppel can be applied against the Tribe in the appropriate circumstances.[9]
We now proceed to apply laches to the facts of this case.
There are two elements to establish a laches claim: “Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.” Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Whether the doctrine bars an action in a particular situation “depends upon the circumstances of that case.” Burnett v. New York Central Railroad, 380 U.S. 424, 435, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).
Under the first element, there is no question that the Tribe, Enrollment Committee, and staff were not diligent and unjustifiably delayed instituting this enrollment investigation and the subsequent action to disenroll Petitioners. For up to 27 years, from 1986 to 2013, the Tribe was on actual notice of the facts and circumstances under which Petitioners and their ancestors were enrolled. The Tribe allowed 27 years to pass before taking any action on this alleged enrollment error.[10]
The second element requires the proponent of laches to present evidence that they were “harmed, either by being hampered in his ability to defend or by incurring some other detriment.” United States v. Administrative Enterprises, Inc., 46 F.3d 670, 672 (7th Cir.1995). “Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue.” Miller v. Eisenhower Medical Center (1980) 27 Cal.3d 614, 624, 166 Cal.Rptr. 826, 614 P.2d 258.
Petitioners raised their laches defense before the Enrollment Committee and in their appeal to the Trial Court. However, it does not appear that they presented any evidence at either stage of this process on the harm or prejudice they have already incurred, or might incur, if the Tribe is allowed to proceed with this disenrollment procedure after 27 years of delay. We considered remanding this case to the Enrollment Committee/Board to hold an evidentiary hearing so Petitioners could present evidence of prejudice, but as one court has stated: “Although [laches and] estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether [laches and] estoppel applies is a question of law.” Feduniak, 148 Cal.App.4th at 1360, 56 Cal. Rptr.3d 591. Consequently, we analyze as a question of undisputed fact and law whether Petitioners would suffer the kind of prejudice courts have identified as important if this disenrollment process is allowed to proceed after this long delay.
*363 Courts have noted that the requisite prejudice needed for laches to apply can be shown by loss of evidence, the faded memories and deaths of witnesses, passage of such a length of time that makes gathering and discovering evidence difficult or impossible, and reasonable reliance on the delay such as changes in position or condition that would be nearly impossible or very injurious to undo. Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001); Saul Zaentz Co. v. Wozniak Travel, Inc., 627 F.Supp.2d 1096, 1117 (N.D.Cal. 2008) (evidentiary prejudice arises from lost, stale, or degraded evidence; faded memories and witnesses who have died; expectation based prejudice derives from a party “taking actions or suffering consequences that it would not have, had the plaintiff brought the suit promptly.”); Marriage of Plescia (1997) 59 Cal.App.4th 252, 256-57, 69 Cal.Rptr.2d 120 (same).
The only reasonable conclusion that can be drawn from the facts in this case is that Petitioners have been prejudiced by the 27 year delay, including the faded memories and deaths of relevant witnesses, and a passage of such an amount of time that makes discovering evidence difficult or impossible. Moreover, Petitioners reasonably relied on the Tribe’s 27 year lack of action and did change their positions and conditions such that it would be nearly impossible and very injurious to undo, including the impact on such crucial issues as cultural and personal identity. Petitioners would also suffer the loss of some well-known benefits of tribal citizenship such as tribal and Indian Health Service medical and dental care, tribal housing, tribal employment opportunities, and per capita distributions of revenues and more.
In light of the undisputed facts regarding the 27 year unreasonable delay in the Tribe bringing this action and the reasonably anticipated prejudice and harm that Petitioners would suffer if the Tribe were allowed to proceed with this disenrollment action, we hold that laches prevents the Tribe and Enrollment Committee/Board from so proceeding.[11]
C. Equitable estoppel
“Estoppel is closely related to and sometimes identical with laches.” 1 Dobbs, supra, at 89. Estoppel means in essence “that someone is ‘stopped’ from claiming or saying something; usually he is stopped from saying the truth or claiming a lawful claim, and usually this is be *364 cause of some prior inconsistent statement or activity.” Id. at 84. “Equitable estop-pel ‘operates to place the person entitled to its benefit in the same position he would have been in had the representations been true.’ ” CIGNA Corp. v. Amara, 563 U.S. 421, 441, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011) (citation omitted).[12]
We already cited several federal, state, and tribal court cases that applied, or considered applying, equitable estoppel to governments. Many other courts have done the same. See, e.g., Office of Personnel Management v. Richmond, 496 U.S. 414, 421, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (“our more recent cases have suggested the possibility that there might be some situation in which estoppel against the Government could be appropriate.”); Burnside-Ott Aviation v. United States, 985 F.2d 1574 (Fed.Cir.1993) (issue of fact had to be determined before the court would apply estoppel to the U.S.); Hollenbeck v. U.S. Internal Revenue Serv., 166 B.R. 291 (Bankruptcy Court, S.D.Tex. 1993) (IRS was equitably estopped from collecting taxes); Howard Bank v. United States, 759 F.Supp. 1073 (D.Vt.1991) (IRS was estopped from raising a legal argument).
The Tribe correctly states that, at least in federal court, the United States must have engaged in some kind of affirmative misconduct before it can be estopped; merely negligent conduct or accidentally providing false information will not estop the U.S. See, e.g., Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (federal representative’s errors fell short of conduct which might estop Social Security Administration); Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1320 (11th Cir.2003) (such claims require “some ‘affirmative misconduct on the part of the government officials’ ”).
We do not decide today whether the Tribe has to engage in affirmative misconduct before equitable estoppel can be applied against it. But it seems clear that enrolling Petitioners’ lateral and lineal ancestors, allegedly in error, and then repeatedly enrolling Petitioners, allegedly in error, and then repeatedly telling them, allegedly in error, for 27 years that they were properly enrolled in the Tribe could be affirmative misconduct.[13] Notwith *365 standing that point, we hold that equitable estoppel applies to the Grand Ronde Tribe under the facts of this appeal.
The core elements of estoppel are: “First, the actor, who usually must have knowledge, notice or suspicion of the true facts, communicates something to another in a misleading way, either by words, conduct or silence. Second, the other in fact relies, and relies reasonably or justifiably, upon that communication. And third, the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.” 1 Dobbs, swpra, 85 (footnotes and citations omitted); accord Fischer, supra, 480-81.
Applying these elements: first, it is undisputed that the Tribe had knowledge and notice of the facts regarding the enrollment of Petitioners’ ancestors and Petitioners’ claims to enrollment, and yet communicated to them for up to 27 years the allegedly misleading statements that they were enrolled citizens of the Grand Ronde Tribe. Second, there is no dispute that Petitioners did in fact reasonably and justifiably rely upon these communications and conduct by the Enrollment Committee and Tribe. And third, it is incontestable that Petitioners would be materially harmed if the Tribe and Enrollment Committee/Board are now permitted to assert a claim inconsistent with their 27 years of conduct and statements. There is no question that tribal citizenship is an important and undeniably valuable status for personal, family, cultural, and even financial reasons. To lose that status would materially harm the Petitioners.
We hold that the Tribe and Enrollment Committee/Board are estopped from attempting to disenroll the Petitioners based on the alleged 1986 error in enrolling their lineal and lateral ancestors. The Tribe is estopped after making the initial enrollment decisions 27 years ago, continually enrolling the Petitioners/Appellants ever since, and after 27 years of consistently recognizing and stating that all these people are Grand Ronde citizens.[14]
D. Future issues
Our decisions on laches and estoppel terminate this appeal. But we proceed to address other matters that will likely arise in current or future cases so as to give guidance to the Tribe and tribal agencies that might prevent unnecessary proceedings and litigation. We recognize, however, that specific factual situations might arise that could compel us to apply the following dicta in different ways.
In our opinion, when a tribe alleges that it has committed a past error in enrollment, or on any other issue, and it seeks to correct that error, the tribal government and/or administrative agency is in essence the plaintiff in the proceeding. By comparison, in federal administrative agency actions the agency bears the burden of persuasion. William Funk, et al., Administrative Procedure and Practice 202 (5th ed. 2014). Thus, in our opinion, the Tribe *366 or agency voluntarily takes on the burden to produce evidence that tends to prove that it committed an error, for example, and to meet whatever standard of proof is required to establish that an error was actually committed.
In decisions as serious as disenroll-ments, we believe that the government has the burden of producing evidence on whatever issue is raised, and then has the burden to prove to the fact finder that any claimed error is established by clear and convincing evidence. Tribal citizenship is as important as is U.S. citizenship, and the Supreme Court has stated in that regard: “the right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences.” Fedorenko v. United States, 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). Consequently, federal courts have established a high standard of proof before an American citizen can lose citizenship: “The Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship. The evidence justifying revocation of citizenship must be ‘clear, unequivocal, and convincing’ and not leave the issue in doubt.” Id. (citations and quotation marks omitted); see also United States v. Jean-Baptiste, 395 F.3d 1190, 1192 (11th Cir.), cert. den., 546 U.S. 852, 126 S.Ct. 113, 163 L.Ed.2d 124 (2005) (“in denaturalization proceedings ... a court should only revoke citizenship if the government presents ‘clear, unequivocal, and convincing* evidence establishing that citizenship was illegally procured.”).
We see no difference in the tribal setting. A disenrollment or denaturalization case is so important to the Tribe and the individuals involved that proof of disenrollment must be proffered by the Tribe and/or the Enrollment Committee/Board and staff and must be proven to the fact-finder by a clear and convincing evidentia-ry standard.
If we had been required to analyze the record, the facts, and the proceedings in this appeal, we would have remanded these cases for the Enrollment Committee/Board to reconsider. And we would have placed the burden of producing evidence on the Enrollment staff that it made an error in 1986 in enrolling Petitioners’ ancestors and in enrolling Petitioners thereafter. We would also require the Enrollment staff to convince the Enrollment Committee/Board, the fact finder and decision maker, and subsequently our courts, by clear and convincing evidence that an error had been made and that disenrollment was the correct remedy.
Enrollment cases are so important to crucial tribal interests, and to the individual and familial interests of family, culture, and personal identity, that this heightened standard of proof, and placing the burden on the Tribe, is well justified. Disenrollment is such an extreme sanction for tribal citizens that it justifies using the heightened civil standard of proof of clear and convincing evidence.
IV. CONCLUSION
We have decided this appeal based only on the exceptional fact pattern in which it was presented: an attempt to correct an alleged error committed 27 years ago in enrolling Petitioners’ lateral and lineal ancestors into the Tribe, and the continuation of that alleged error in enrolling Petitioners in the intervening decades. We have applied laches and estoppel to the Grand Ronde Tribe and rejected that attempt. We recognize, as did the Second Circuit in 2005, that it is rare to apply laches and estoppel to governments and we do so only in “the most egregious instances”. Cayuga, 413 F.3d at 279. We also conclude, as did the Second Circuit, “that whatever the *367 precise contours of the exception to the rule against subjecting the United States [or the Grand Ronde Tribe] to a laches defense, this case falls within the heartland of the exception.” Id.
The September 1, 2015 Order Denying Appeal issued by the Trial Court is REVERSED. This consolidated appeal is REMANDED to the Trial Court to grant the administrative appeals in Trial Court cases C-14-022 to C-14-088 and is then REMANDED to the Enrollment Committee/Board for its decisions disenrolling these persons to be dismissed with prejudice in favor of the Petitioners/Appellants.
REVERSED.
WE CONCUR: PATRICIA C. PAUL and DOUGLAS NASH, Court of Appeals Judges.

. The agency is now called the Enrollment Board. Appellee’s Brief, at 1 n.2.

. In discussing Atcitty v. District Court for the Judicial District of Window Rock, 7 Nav. Rptr. 227 (Nav.Sup.Ct.1996), Austin states that "Navajo due process defined within the context of community allowed the applicants for government benefits more rights than they would have received under federal court interpretations and applications of due process.” Austin, supra, at 113 (emphasis added). See also Atcitty, at 231 ("Traditional Navajo due process encompasses a wider zone of interest than general American due process. In cases concerning entitlement to governmental benefits, Navajo due process protections would extend to outcome, making it very relevant.”).

. The Grand Ronde court ordinance expressly mentions our authority over injunctions. Tribal Court Ordinance, § (h)(7). Injunctions are equitable remedies. NLRB v. P*I*E Nationwide, Inc., 894 F.2d 887, 893 (7th Cir. 1990) ("an injunction is the exercise of an equitable power”).

. Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("it is well setded that the Government may not be es-topped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government. We have left the issue open in the past, and do so again today.” (footnotes omitted)); I.N.S. v. Miranda, 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam) *360 (same); I.N.S. v. Hibi, 414 U.S. 5, 8, 94 S.Ct. 19, 38 L.Ed,2d 7 (1973) (per curiam.) ("the issue of whether ‘affirmative misconduct’ on the part of the Government might estop it from denying citizenship was left open in Montana v. Kennedy, 366 U.S. 308, 314[, 315, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961)]”); United States v. Dang, 488 F.3d 1135, 1143-44 (9th Cir.2007) (“It remains an open question in this circuit as to whether laches is a permissible defense to a denaturalization proceeding.”); United States v. Administrative Enterprises, Inc., 46 F.3d 670, 672-73 (7th Cir.1995) (“federal common law, relies upon the doctrine of laches- A threshold question concerning the application of the doctrines of laches in this case is whether it can ever be invoked against the federal government. Some courts regard the question as completely unsettled. There is no dearth of statements that laches cannot be used against the government, yet both P*I*E and Vucitech involved suits by the government, and the availability of laches in at least some government suits is supported by Supreme Court decisions, that refuse to shut the door completely to the invocation of laches or estop-pel” (citations omitted)).

. Contra Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist. et al., 2016 WL 2621301, at *3 (C.D.Cal.2/23/2016) (lach-es could not be applied to the co-plaintif£4n-tervenor United States in a suit involving land owned by the U.S. in trust for a tribe); United States v. Wang, 404 F.Supp.2d 1155, 1157-59 (N.D.Cal.2005) (equitable defenses of waiver and laches not allowed against U.S. in a de-naturalization case in which defendant had fraudulently acquired citizenship).

. See, e.g., Equal Employment Opportunity Comm’n v. Dresser Industries, Inc., 668 F.2d 1199, 1201-02 (11th Cir.1982) (dismissing EEOC suit as barred by laches after 68 month delay); EEOC v. Alioto Fish Co., 623 F.2d 86 (9th Cir.1980) (dismissing EEOC suit as barred by laches after 62 month delay); EEOC v. Westinghouse Elec. Corp., 592 F.2d 484 (8th Cir.1979)(laches applied to EEOC); EEOC v. Liberty Loan Corp., 584 F.2d 853, 857-58 (8th Cir.1978) (EEOC barred by lach-es after 52 month delay); Equal Employment Opportunity Comm'n v. Jetstream Ground Services, Inc., 134 F.Supp.3d 1298, 1331 (D.Colo. 2015) ("laches may constitute an equitable defense to a Title VII action when the EEOC’s 'unexcused or unreasonable delay has prejudiced [its] adversary.’ ”).

. See, e.g., NLRB v. P*I*E Nationwide, Inc., 894 F.2d 887, 894 (7th Cir.1990) ("government suits in equity are subject to the principles of equity, laches is generally and we think correctly assumed to be applicable to suits by government agencies as well as by private parties,"); United States v. Lindberg Corp., 882 F.2d 1158, 1163 (7th Cir.1989); United States v. Ruby Co., 588 F.2d 697, 701-03 (9th Cir.1978) (estoppel is applicable against U.S.; here, there was no showing of sufficient affirmative misconduct by the government to estop it); United States v. Lazy FC Ranch, 481 F.2d 985, 987-88 (9th Cir.1973) (U.S. estopped from recovering money paid under soil bank program; estoppel is applicable to the United States where justice and fair play require); United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir.1970) (U.S. seeking declaratory relief and specific performance; held that under the circumstances government was not entitled to immunity from es-toppel); Spears v. Federal Crop Ins. Corp., 579 F.Supp. 1022 (E.D.Tenn.1984) (Federal Crop Insurance Corp. estopped), vacated, 614 F.Supp. 540 (1985). See also Mary V. Laitos et al., "Equitable Defenses Against the Government in the Natural Resources and Environmental Law Context”, 17 Pace Envtl. L. Rev. 273, 296-300 (2000); David K. Thompson, Note, "Equitable Estoppel of the Government”, 79 Colum. L. Rev. 551 (1979).

.See, e.g., Hoopa Valley Tribal Council v. Sherman, 7 N.I.C.S. 9, 12, 14-16 (Hoopa Valley Tribal Ct.App.2005) (defendant proved es-toppel, acquiescence, and laches against tribal government), http://www.codepublishing. com/WA/NICS/; Membership of Julie Bill Meza, 7 N.I.C.S. Ill, 117-18 (Sauk-Suiattle Ct.App.2006) (denying estoppel defense), http://www.codepublishing.com/WA/NICS/; Kalk v. Mille Lacs Band of Ojibwe Corporate Comm'n, — Am. Tribal Law —, 2004 WL 5746060 (Mille Lacs Ct.App. 9/16/2004) (same); Shopbell v. Tulalip Gaming Commission, 3 N.I.C.S. 363, 368 (Tulalip Tribe Ct. App.1994) (applied estoppel to the tribe but elements were not proven), http://www. codepublishing.com/WA/NICS/; Brown v. City of New York, 264 A.D.2d 493, 694 N.Y.S.2d 461 (1999) (estoppel enforced against City Health and Hospitals Corp.); Harbor Air Serv., Inc. v. State Dept. of Revenue, 88 Wash.2d 359, 367, 560 P.2d 1145 (1977) (supreme court estopped state from collecting taxes); Shafer v. State, 83 Wash.2d 618, 622, 521 P.2d 736 (1974) (estoppel can be applied to the state if necessary to prevent manifest injustice and governmental functions are not impaired); Pioneer Nat’l Title Ins. Co. v. State, 39 Wash.App. 758, 760-61, 695 P.2d 996 (1985) (estoppel can be asserted against the state); City of Long Beach v. Mansell (1970) 3 Cal.3d 462, 493, 496-97, 91 Cal.Rptr. 23, 476 P.2d 423; Feduniak v. California Coastal Comm'n, 148 Cal.App.4th 1346, 56 Cal.Rptr.3d 591, 600-01, 617-18 (6th Dist.), rev. den., (2007) (applying estoppel and laches to state); J.H. McKnight Ranch, Inc. v. Franchise Tax Bd. (2003) 110 Cal.App.4th 978, 991, 2 Cal.Rptr.3d 339; Kimberly-Clark Corp. v. Dubno, Comm. Of Revenue, 204 Conn. 137, 527 A.2d 679, 684 (1987); North Carolina v. Alcoa Power Generating, Inc., 2014 WL 6609763, at *7 (E.D.N.C.11/20/2014) ("North Carolina courts have applied laches against state actors.” (citing Town of Cameron v. Woodell, 150 N.C.App. 174, 563 S.E.2d 198 *362 (2002); Abernethy v. Town of Boone, 109 N.C.App. 459, 427 S.E.2d 875 (1993))).

. It is irrelevant that Petitioners were in essence the plaintiffs in the case below. See City of Sherrill v. Oneida Indian Nation, 544 U.S. 197, 214 n. 7, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005) ("The equitable cast of the relief sought remains the same whether asserted affirmatively or defensively.”). In addition, as we state in section D„ we consider the Tribe, Enrollment Committee, and Enrollment Staff to have been the “plaintiffs" in this administrative disenrollment action.

. Until 2011, a federal regulation only allowed the U.S. Immigration and Naturalization Service two years to bring an administrative action to denaturalize a newly-naturalized citizen. 8 C.F.R. § 340.1(b) (2010).

. The Trial Court held that laches could not be applied to the Tribe. Vol. 2 Petitioners Excerpts of Record, at 360. Since we are reviewing that decision de novo, we “consid-ere 1 the matter anew as if no decision previously has been rendered.” The Confederated Tribes of Grand Ronde v. M.Q., at 4. However, we will briefly address the three reasons the Trial Court relied on. We respectfully disagree with all three.
First, the Trial Court stated that the Tribe made only a “narrow waiver of sovereign immunity” for judicial review of enrollment appeals and did "not include explicit language permitting a defense of laches.” But the Constitution and Tribal Council expressly granted our courts that authority. As already noted, the Enrollment Ordinance grants us the authority to review questions of law and mixed questions of law and fact "de novo.” Laches is a question of law, and of fact, and thus Petitioners can plead that issue and we can review it. Second, the Trial Court relied on federal case law that the United States cannot be prevented by laches from enforcing its rights. We have already held the opposite in regards the Grand Ronde Tribe based on the cases and analysis discussed above. Finally, the Trial Court stated that "the CTGR action to remove Petitioners from membership is not an equitable claim.” That is an incorrect statement of law. The U.S. Supreme Court says "that a denaturalization action is a suit in equity.” Fedorenko v. United States, 449 U.S. 490, 516, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981) (citing two other Supreme Court cases).

. There is another type of estoppel that might apply and prevent the Tribe from arguing now that Petitioners are not Grand Ronde citizens: the Tribe has long argued in other venues that Chief Tumulth, the Walala and Cascade Tribes, and Tumulth’s relatives, who were enrolled in the Tribe, all lived in the Columbia River Gorge and Cascade Locks areas. The Tribe used these arguments to claim rights in those areas. The Tribe might be estopped from now making the opposite argument regarding the Petitioners. See Vol. 1 Petitioner Excerpt of Record, Exh. H, at 92-99 (Grand Ronde Public Affairs document); Exh. I, at 103 (Grand Ronde attorney paraphrased in Indian Country Today, Nov. 17, 2009 that Grand Ronde “possesses ancestral ties to Cascade Locks and that Chief Tumulth and his Walala people fished and lived in the area. The Walala were forced off their lands and onto the Grand Ronde reservation, he added.’’); accord id. at 104 & 105-06, News From Indian Country, Apr. 27, 2007; Gail Oberst, "Grand Ronde seeking say in Gorge,” News-Register, Apr. 26, 2007 ("Grand Ronde officials have countered by saying descendants of Chief Tumulth and Chief Obanaha, both of whom signed treaties establishing off-reservation fishing and hunting rights in the Columbia River Gorge, are now members of Grand Ronde tribe. They say the tribal homelands of these members lie in the Gorge.”).

. Such a long chain of alleged misconduct and misstatements is far more than a onetime negligent act or the mere "negligent provision of misinformation.” Sulit v. Schiltgen, 213 F.3d 449, 454 (9th Cir.2000). Furthermore, the Ninth Circuit has explained that "the 'affirmative misconduct’ limitation ... must be read as requiring an affirmative misrepresentation or affirmative concealment *365 of a material fact by the government.” United States v. Ruby Co., 588 F.2d 697, 703-04 (9th Cir.1978). The allegedly erroneous actions of the Tribe and Enrollment Committee over 27 years seem to meet that definition.

. The Trial Court said Petitioners’ equitable estoppel claim failed because when the government is the party to be estopped it must have been more than merely negligent, its action must constitute “affirmative misconduct.” We have not decided today when, or if, we will require affirmative misconduct before applying estoppel to the Tribe. But as stated in footnote 13, we consider the Tribe’s actions in this case to have been far more than just a negligent misstatement. See Socop-Gonzalez v. INS, 208 F.3d 838, 843 (9th Cir.2000) (“a pattern of false promises” could be affirmative misconduct).